IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EARL BRADLEY, | § | |
| | § | No. 300, 2015 |
| Defendant Below-Appellant, | § | |
| | § | Court Below: |
| v. | § | Superior Court of the |
| | § | State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | |
| | § | Cr. I.D. No. 0912011155 |
| Plaintiff Below-Appellee. | § | |

Submitted: March 2, 2016
Decided: March 3, 2016

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

Upon appeal from the Superior Court.   **AFFIRMED**.

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware for Appellant.

Elizabeth R. McFarlan, Esquire, Department of Justice, Wilmington, Delaware for Appellee.

**VALIHURA**, Justice:

Pending before this Court is an appeal from a June 5, 2015 Opinion of the Superior Court, denying Earl Bradley's ("Bradley") Second Amended Motion for Postconviction Relief (the "Second Amended Motion").[1] On September 6, 2012, this Court affirmed the underlying judgment of the Superior Court, finding Bradley guilty of fourteen counts of Rape in the First Degree, five counts of Assault in the Second Degree, and five counts of Sexual Exploitation of a Child for acts of sexual and physical abuse committed against children.[2] Bradley was sentenced to fourteen mandatory life sentences and 164 years at Level V imprisonment for these crimes.

In his 2012 direct appeal, Bradley argued that the search warrant for his former medical practice, BayBees Pediatrics, P.A. ("BayBees Pediatrics"), was defective because the affidavit in support of the search warrant application did not allege facts establishing probable cause that the medical files of certain patients would be found in a white outbuilding on the BayBees Pediatrics property, would be contained in digital format, or would relate to the crimes described in the search warrant application. Bradley also asserted that the police exceeded the scope of the search warrant by proceeding with a general search to locate and seize evidence without probable cause. We rejected Bradley's claims.

Bradley raises three issues in this postconviction appeal. *First*, he argues that the Superior Court erred when it denied his request for an evidentiary hearing and held that State action did not deprive him of his right to choice of counsel. *Second*, Bradley

---

[1] *State v. Bradley*, 2015 WL 3551898 (Del. Super. June 5, 2015).
[2] *Bradley v. State*, 51 A.3d 423, 427 (Del. 2012) [hereinafter, "*Bradley I*, 51 A.3d at __"].

1

contends that the Superior Court erred when it held that his trial and appellate counsel were not ineffective when they failed to object to the presentation of evidence outside of the four corners of the search warrant. *Third*, he urges that the Superior Court erred in finding that his trial and appellate counsel litigated, in an effective and professionally reasonable manner, the claim that the police had performed an unrestricted search of his property in violation of the Fourth Amendment of the United States Constitution and Article I, § 6 of the Delaware Constitution.

For the reasons set forth below, we AFFIRM the Superior Court's denial of postconviction relief.

## I.    FACTUAL BACKGROUND

The facts as they appear in this Court's 2012 Opinion on direct appeal are as follows:

> In December 2009, a mother informed a retired Delaware State Police detective of her young daughter's statement that Bradley, the child's pediatrician, had touched her vaginal area in the basement of his office during a routine medical visit. The retired detective informed Detective Thomas Elliott, who sat in on an interview of the child by the Child Advocacy Center. During the interview, the child repeated that Bradley had touched her in that manner.
>
> The Delaware State Police had received prior complaints in 2008 concerning Bradley. Detective Elliott and another officer had sought a search warrant to search BayBees Pediatrics for evidence of child pornography, but that application was denied. One of the 2008 complaints involved a twelve-year-old female who visited Bradley regarding a sore throat and possible pink eye. Bradley conducted a full vaginal examination on her for several minutes. When the girl left, she started crying and told her mother that she felt dirty about the incident. Another case involved a six-year-old girl who visited Bradley for Attention Deficit Disorder. Bradley had the child take her clothes off, and attempted to perform a vaginal examination on her. Finally, a seven-year-old girl visited Bradley

2

for excessive urination. He performed two vaginal examinations on her, with the girl draped so that her mother could not see what was occurring. Detective Elliott also learned of a 2005 investigation into Bradley's conduct by the Milford Police Department.

Based on the prior complaints against Bradley, the December 2009 complaint, and additional investigation, police applied for a new search warrant from the Superior Court. This December 15, 2009 search warrant application stated, in relevant part:

ITEMS TO BE SEARCHED FOR AND SEIZED

1. Files to include medical files relating to the treatment and care of listed children, to include paper files, as well as computer files in regards to Child 1, 2, 3, 4, 5, 6, 7, and 8 and any other alleged Victims that come forward from the time the search warrant is signed, until it is executed.

2. Video and photographs of the below listed location.

SPECIFIC DESCRIPTION OF PREMISES AND / OR PLACE(S) AND / OR VEHICLE (S) AND / OR PERSON (S) TO BE SEARCHED:

A two story residence style building, white in color, located at 18259 Coastal Highway, Lewes, DE. 19958. There is a yellow Volk[s]wagon, with BayBees Pediatrics displayed on the car. There are signs at the front of the building that display "BayBees Pediatrics["] and ["]Earl B. Bradley["] on the signs.

NAME OF OWNER(S), OCCUPANT(S) OR POSSESSOR(S) OF PREMISES AND/OR PLACE(S) AND/OR VEHICLE(S) AND/OR PERSON(S) TO BE SEARCHED:

Earl B. Bradley (DOB–05/10/53), a white male. BayBees Pediatrics, 18259 Coastal Highway, to include a white outbuilding, located on the property.

In the supporting affidavit of probable cause, Detective Elliott described reports of inappropriate touching and examinations of eight girls between the ages of approximately three years old and twelve years old. The reports included statements that Bradley kissed patients on the mouth, touched their vaginal areas without apparent medical reason, or carried

3

them around the office excessively. The affidavit also included accounts from former colleagues of Bradley that patients had transferred from Bradley to them because Bradley conducted inappropriate vaginal examinations, separated children from their parents for long periods of time, or forced children to undress.

The affidavit also recounted a statement from a former employee that Bradley had installed surveillance cameras throughout his current office, and that Bradley could access those cameras from his home. According to a former colleague, Bradley took digital pictures of patients and manipulated the pictures on his computer.

In describing the patient complaints, the affidavit referred to the main building and to an "outbuilding" behind Bradley's office:

> During an interview with the father of the child he advised when he was at the office on 10/28/09, he observed Dr. Bradley carrying a patient to an outbuilding located behind the office.

Detective Elliott represented that he had corroborated the address of the BayBees Pediatrics, and the existence of an outbuilding on the property. The affidavit stated:

> The office also has an outbuilding, which affiant has learned is utilized by Dr. Bradley. Dr. Bradley takes his patients into the outbuilding as well as the basement of his office.

* * *

> Your Affiant has shown that there is information that Dr. Bradley has installed video recording devices throughout his office which not only are accessible by Dr. Bradley at his office but that Dr. Bradley has also configured the material recorded to be accessed at his home with the use of his home computer. Your Affiant has also shown information that Dr. Bradley uses his personal computer in the Doctor's office and at home, takes digital photographs of patients and manipulates them on the computer. . . . Your affiant believes that evidence may be found on Dr. Bradley's computers and/or digital recording equipment that will be able to corroborate statements made by witnesses, help in identification of other victim[s] in the search warrant. Your affiant also has knowledge that doctors use computers to store patient records and details of patients['] visits to the doctor.

4

Finally, in its request to search and seize computers electronic storage devices, the affidavit stated: "[a] suspect may try to conceal criminal evidence, he or she might store it in random order with deceptive file names. This may require searching authorities to examine all stored data to determine which particular files are evidence or instrumentalities of crime."

Police executed the search warrant on the morning of December 16, 2009. When the police arrived at BayBees Pediatrics, they discovered that the property contained four buildings, not two as previously believed. The four buildings consisted of: a main building for the medical practice ("Building A"); a white outbuilding ("Building B"); a white garage ("Building C") and a tan shed ("Building D"). Detective Elliott later testified at the suppression hearing that, in preparing the search warrant application, he had driven by on Route 1 and had only observed Building A and a "large white building towards the rear of the property," later determined to be Building B.

When Detective Elliott and his superiors observed the additional buildings on the day of the search, they called a Deputy Attorney General and asked for assistance. The Deputy Attorney General told them that she was on her way to the scene. By the time she arrived, however, the search was already under way. The police had concluded, without awaiting further advice from the Deputy Attorney General, that the warrant applied to all the buildings on the BayBees Pediatrics property.

Police officers entered Building A and found a video camera on the exam table of the first patient examination room on the right as they entered. The police also found and collected a digital camera from the office area behind the reception room. That camera was sitting on top of paper files. A video camera was also collected from a shelf in the basement of Building A. Police turned the cameras over to the High Tech Crime Unit for analysis without inspecting any data on them. Police recovered paper files for seven of the eight victims listed in the search warrant from Building A, except for the victim who had been linked to the 2005 investigation by Milford police.

Police officers also entered Building B, which contained an office area with a desk and shelving. They recovered numerous digital recording and storage devices from this building, including: five thumb drives from the top of the door frame; two digital hand-held recorders from the shelving and floor by the desk; six other thumb drives and three larger forms of removable media from the desk area; a 2G SanDisk card from a white envelope on a shelving unit; a SanDisk Cruiser thumb drive and Sony

5

Handycam from the dresser; a Sony Net Share camera by the doors; a DVD; and two pen cameras, approximately four to five inches long. Police officers also found a Dell Dimension computer sitting on the desk, with a HP 4G thumb drive in the USB port. They recovered that thumb drive as well as a Sony HD webcam located next to the computer.

Police officers did not seize any evidence from Building C. Police officers entered Building D, the tan shed, and seized a total of thirty-four memory cards, a DVD, a thumb drive, and a desktop computer.

On December 17, 2009, Detective James Spillan began analyzing the digital evidence seized during the search. He first examined the 4G thumb drive that was connected to the Dell computer on Bradley's desk in Building B. The thumb drive contained seven deleted files. The first file that Detective Spillan encountered indicated a date of September 30, 2009 and had a mpg extension, typically indicating a video file. He opened the file and saw a video of Bradley in Building B with a female child approximately three years old. The child appeared upset or in distress, and was crying for her mother. The video showed Bradley pointing the child toward the camera and reaching to remove the child's diaper. At this point, Detective Spillan stopped watching the video, removed the thumb drive from his computer, and reapplied for a new search warrant. He did not review any other material seized. Based on his training, he believed that the video was evidence of sexual exploitation or child pornography. In the new search warrant application, Detective Spillan requested permission to search all of the digital media retrieved the prior day for evidence of these additional crimes. The Superior Court approved the subsequent search warrant application, and the police executed those warrants.

Bradley was arrested the same day that the initial search warrant was executed. He was later indicted on multiple counts of Rape in the First Degree, Assault in the Second Degree, and Sexual Exploitation of a Child, along with other charges. Bradley moved to suppress evidence seized pursuant to the searches conducted on December 16 and December 17. After a two-day evidentiary hearing and briefing by the parties, the Superior Court denied the motion in a forty-three-page written opinion.

Thereafter, Bradley waived his right to a jury trial, and the parties proceeded to a bench trial based on an amended superseding indictment. The State presented videotape evidence of the sexual offenses. The average age of the victims was only three years old. Some of the videos depicted Bradley carrying young children down to the basement below Building A. He would pull the girl's underwear down and film her vagina or buttocks.

The videos depicted him fondling or kissing girls, and occasionally depicted him attempting to perform cunnilingus on them. In other cases, Bradley used a hidden pen camera to film a girl's vagina in the examination room, under drape, as he performed a vaginal examination. Some of the videos depicted violent, forcible rapes of young children in Building B. These child victims were toddler-aged.

The trial judge found Bradley guilty of all crimes charged in the amended superseding indictment. He was sentenced to fourteen mandatory life sentences and 164 years at Level V imprisonment. Th[e 2012 direct] appeal followed.[3]

## II.    RELEVANT PROCEDURAL BACKGROUND

On January 20, 2010, the State filed a complaint against Bradley under 11 *Del. C.* § 1505, alleging violations of the civil racketeering statute and seeking civil penalties, damages, civil forfeiture, and injunctive relief. Specifically, the complaint alleged that Bradley engaged in racketeering activity pursuant to 11 *Del. C.* § 1502(9)(a), including the sexual exploitation of children under 18 U.S.C. § 2251(a). Bradley, BayBees Pediatrics, and Bradley Family LLC were each named as defendants in the racketeering complaint. On January 21, 2010, the State filed a racketeering lien notice pursuant to 11 *Del. C.* § 1507(a), effectively freezing Bradley's assets.

In a letter, dated March 4, 2010, counsel who represented Bradley at his preliminary hearing ("Preliminary Hearing Counsel") wrote to the President Judge of the Superior Court, noting that he "was initially hired by a member of Dr. Bradley's family to evaluate the case for them so that they could make a determination as to whether they should fund a defense in the case."[4] Preliminary Hearing Counsel also indicated that

---

[3] *Bradley I*, 51 A.3d at 428-31.
[4] A187.

7

Bradley's family was "not inclined to come forward with the funds necessary to secure" mental health experts.[5] Preliminary Hearing Counsel stated that Bradley was unable to fund the representation himself, in view of the racketeering lien.[6] Accordingly, Preliminary Hearing Counsel indicated his willingness to continue representing Bradley on a court-appointed basis and sought "public funds" to perform mental health evaluations of Bradley. On March 24, 2010, two members of the Office of the Public Defender entered their appearance in Bradley's case ("Trial Counsel").[7]

On July 9, 2010, Trial Counsel filed a motion to suppress all evidence seized during the December 16 and 17, 2009 search of Bradley's property (the "Motion to Suppress"). The Superior Court held an evidentiary hearing on the Motion to Suppress on August 31 and September 1, 2010. On April 13, 2011, the Superior Court denied the Motion to Suppress.[8]

After Bradley waived his right to a jury trial, a bench trial was held on June 7, 2011. On June 23, 2011, the Superior Court found Bradley guilty on all counts. On September 6, 2012, this Court affirmed the judgment of the Superior Court.[9]

On February 27, 2013, Bradley filed a *pro se* Motion for Postconviction Relief. The Superior Court subsequently appointed counsel for Bradley ("Postconviction

---

[5] *Id.*

[6] Preliminary Hearing Counsel referenced the racketeering complaint and racketeering lien in a footnote in his letter to the President Judge of the Superior Court. The footnote provided: "The State, it should be noted, has taken steps to 'freeze' Dr. Bradley's assets so there are no funds available from that source." A188.

[7] Additional attorneys from the Office of the Public Defender participated in Bradley's case as it progressed.

[8] *See generally State v. Bradley*, 2011 WL 1459177 (Del. Super. Apr. 13, 2011).

[9] *Bradley I*, 51 A.3d 423.

Counsel"), and Postconviction Counsel submitted an Amended Motion for Postconviction Relief on January 23, 2014. Without objection, on May 19, 2014, Postconviction Counsel filed the Second Amended Motion.

The Second Amended Motion asserted five grounds for postconviction relief. *First*, Bradley claimed that State action deprived him of his right to choice of counsel, under the Sixth Amendment to the United States Constitution and Article I, § 7 of the Delaware Constitution. *Second*, he argued that his trial counsel was ineffective for failing to challenge the trial court's consideration of evidence falling outside of the four corners of the relevant search warrant. *Third*, Bradley urged that his appellate counsel was ineffective for failing to raise the issue of the trial court's consideration of evidence outside of the search warrant on appeal. *Fourth*, he contended that his appellate counsel was also ineffective for failing to move for reargument before this Court, following this Court's Opinion affirming his conviction on direct appeal. *Fifth*, Bradley asserted that his counsel was ineffective for failing to assert or move for reargument on the basis that the executing detective's allegedly "unguided, discretionless" search of Bradley's digital devices was a violation of the Fourth Amendment of the United States Constitution and Article I, § 6 of the Delaware Constitution. Bradley also sought an evidentiary hearing in the Second Amended Motion[10] and in his reply brief in support of the Second Amended

---

[10] Under the heading "Entitlement to Relief Under Rule 61," Bradley asserted that, "[i]f facts underlying each claim would entitle a Petitioner to the relief requested, the court must accordingly grant an evidentiary hearing on each." A395 (Second Amended Motion at 11). Further, Bradley requested an evidentiary hearing with respect to his claim of ineffective assistance of counsel for failing to challenge Detective Spillan's allegedly unguided search. *See* A426-30 (Second Amended Motion at 42-46). Finally, in the "Conclusion" of his Second

Motion.[11] The Superior Court denied the Second Amended Motion in its June 5, 2015 Opinion.

Bradley filed a Notice of Appeal in this Court on June 12, 2015. One week later, on June 19, 2015, he filed a motion to stay the appeal pending the United States Supreme Court's decision in *Luis v. United States*.[12] In light of the differences between Bradley's case and *Luis*, this Court, on September 14, 2015, denied Bradley's Motion to Stay, finding no basis for an indefinite stay of this appeal.[13] On December 22, 2015, Postconviction Counsel sent a letter to the Court explaining that Bradley was requesting replacement counsel. On December 28, 2015, at Bradley's direction, Postconviction Counsel moved for the appointment of substitute counsel to represent him. In support of his request for new counsel, Bradley alleged, in conclusory fashion, that Postconviction

---

Amended Motion, Bradley, without reference to a specific claim, broadly requested that the Superior Court "schedule an evidentiary hearing and that th[e Superior] Court grant all appropriate relief." A431 (Second Amended Motion at 47).

[11] In his Reply Brief in support of his Second Amended Motion, when asserting his claim that State action deprived him of his right to choice of counsel and contending that he sufficiently pled a violation of the Delaware Constitution, Bradley asserted: "Mr. Bradley seeks an evidentiary hearing, after which he will seek an order from the [Superior] Court setting forward a briefing schedule." Second Amended Motion Rep. Br. at 2. Further, in the same brief, Bradley argued that Preliminary Hearing Counsel was his representative, stating: "Mr. Bradley has demonstrated evidence of [Preliminary Hearing Counsel's] representation in his [Second Amended Motion] and seeks an evidentiary hearing on the issue." Second Amended Motion Rep. Br. at 5. Finally, in the "Conclusion" of his Reply Brief in Support of his Second Amended Motion, Bradley, without reference to a specific claim, broadly requested that the Superior Court "schedule an evidentiary hearing and . . . grant all appropriate relief." Second Amended Motion Rep. Br. at 13.

[12] *See Luis v. United States*, 135 S. Ct. 2798 (2015) (granting petition for writ of *certiorari* to the United States Court of Appeals for the Eleventh Circuit).

[13] *Bradley v. State*, No. 300, 2015, Cr. ID No. 091201155 (Del. Sept. 14, 2015) (ORDER).

Counsel was ineffective and violated the Rules of Professional Conduct.[14]  On January 14, 2016, pursuant to Supreme Court Rule 26(b), this Court denied Bradley's motion seeking the appointment of substitute counsel and ordered that Postconviction Counsel "continue representing Bradley on appeal."[15]

## III.   ANALYSIS

### A.   *Standard of Review*

This Court reviews the Superior Court's denial of postconviction relief for abuse of discretion.[16]  We review questions of law *de novo*.[17]  When reviewing the Superior Court's denial of a motion for postconviction relief, this Court must first consider the procedural requirements of Rule 61 before addressing any substantive issues.[18]

At the time Bradley filed his *pro se* motion for postconviction relief in February 2013, Rule 61[19] provided that a claim was procedurally barred if:  (i) the motion for postconviction relief was filed more than one year after the final judgment of conviction;[20] (ii) the claim was not asserted in a previous postconviction proceeding, unless consideration of the claim is warranted in the interest of justice;[21] (iii) the claim

---

[14] Postconviction Counsel filed Bradley's opening brief and appendices on October 19, 2015. The State filed its answering brief and appendix on November 20, 2015.  Postconviction Counsel filed a reply brief on December 7, 2015.  Three weeks later, Bradley filed the motion for appointment of substitute counsel.

[15] *Bradley v. State*, No. 300, 2015, Cr. ID No. 091201155 (Del. Jan. 14, 2016) (ORDER).

[16] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996) (citing *Bailey v. State*, 588 A.2d 1121, 1124 (Del. 1991)); *see also Hartmann v. State*, 2011 WL 1486567, at *1 (Del. Apr. 19, 2011) (reviewing Superior Court's denial of postconviction relief for an abuse of discretion).

[17] *Dawson*, 673 A.2d at 1190 (citation omitted).

[18] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990) (citing *Harris v. Reed*, 489 U.S. 255 (1989)).

[19] Rule 61 was amended effective June 4, 2014.

[20] Super. Ct. Crim. R. 61(i)(1) (2014).

[21] Super. Ct. Crim. R. 61(i)(2).

11

was not asserted in the proceedings leading to conviction, unless the movant shows cause for relief from the procedural default and prejudice from violation of the movant's rights;[22] or (iv) the claim was formerly adjudicated, unless reconsideration of the claim is warranted in the interest of justice.[23]  Former Rule 61(i)(5)—which still applies to this case—provided that consideration of claims barred by Rule 61(i)(1), 61(i)(2), or 61(i)(3) was limited to claims that the court lacked jurisdiction or to "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[24]

## B.    *The Right to Choice of Counsel Claim*

Bradley first argues that the Superior Court erred in denying his request for an evidentiary hearing and holding that State action did not deprive him of his right to choice of counsel under the Sixth Amendment to the United States Constitution and Article 1, § 7 of the Delaware Constitution.  Bradley claims that he was unable to fund a defense with counsel of his choice because the State filed a civil racketeering complaint against him and a racketeering lien on his assets.  Although the Superior Court concluded

---

[22] Super. Ct. Crim. R. 61(i)(3).

[23] Super. Ct. Crim. R. 61(i)(4).

[24] Super. Ct. Crim. R. 61(i)(5).  Rule 61(i)(5) was amended on June 4, 2014, after Bradley filed the Second Amended Motion.  We apply the version of the Rule that existed at the time Bradley filed his Rule 61 motion.  *See Brochu v. State*, 2016 WL 690650, at *4 n.24 (Del. Feb. 19, 2016) ("The Court notes that the Superior Court properly applied the version of Rule 61 in effect in 2013 when Brochu filed his posconviction motion."); *Starling v. State*, 2015 WL 8758197, at *11 n.95 (Del. Dec. 14, 2015) (citing *Collins v. State*, 2014 WL 2609107, at *2 (Del. June 9, 2014); *State v. Jones*, 2013 WL 5372415, at *3 (Del. Sept. 24, 2013)) ("Although Rule 61(i)(5) was amended on June 4, 2014, we must apply the version that existed at the time Starling filed his Rule 61 motion.").

that this claim was barred by Rule 61(i)(3) because Bradley failed to establish cause for his failure to raise the claim in the proceedings leading to his conviction, the Superior Court nonetheless considered the merits of the claim after finding that Bradley alleged a colorable claim of a miscarriage of justice under Rule 61(i)(5).[25]

The Superior Court concluded that Bradley's claim that he was unable to fund a defense with counsel of his choice due to improper State action was without merit because Bradley relied on cases in which the trial judge, not third party actors, deprived a party of his choice of counsel.[26]  It also found Bradley's claim to be without merit, in view of the fact that the record reflected that Bradley's family, not Bradley, had retained Preliminary Hearing Counsel to advise them on the merits of the case, so they could decide whether to fund a defense.[27]  Further, the Superior Court observed that, because Bradley had failed to request that the trial court rule on the merits of the racketeering complaint, "he cannot now assert that the underlying basis of that action was defective."[28]

We affirm the Superior Court's denial of Bradley's Sixth Amendment claim, and also conclude that Bradley failed to plead a colorable claim of a miscarriage of justice under Rule 61(i)(5).[29]  The Sixth Amendment provides that a criminal defendant has the

[25] *Bradley*, 2015 WL 3551898, at *3.
[26] *Id.* at *3-4.
[27] *Id.* at *4.
[28] *Id.*
[29] *See Johnson v. State*, 2014 WL 2463047, at *1 (Del. May 28, 2014) (citing *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995) (recognizing that this Court may affirm on the basis of different rationale than that articulated by the trial court)).  The Superior Court found the claim to be colorable.  Even assuming, *arguendo*, that it was, we reject it for the reasons set forth herein.

right to the assistance of counsel for his defense.[30]  "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."[31]  But the right to choice of counsel is not absolute.[32]  Only an erroneous deprivation of the right to choice of counsel constitutes a structural error that requires reversal of a criminal defendant's conviction.[33]

Bradley never asserted a right to choice of counsel in the proceedings leading to his conviction.  Based upon the letter from Preliminary Hearing Counsel, who Bradley now claims was his chosen counsel, it appears that Bradley's family, not Bradley, retained this attorney to advise them on the merits of the case so they could decide whether to fund a defense of Bradley.  Further, Bradley never challenged the racketeering complaint or the racketeering lien placed on his assets in the proceedings leading to his conviction.  Ultimately, Bradley did not contest the State's request for entry of default

---

[30] U.S. Const. amend. VI.  Bradley also refers to Article I, § 7 of the Delaware Constitution, but relies upon federal law and does not make any arguments based upon the language or history of the Delaware Constitution.  Conclusory assertions that the Delaware Constitution has been violated are waived on appeal.  *Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2005) (citations omitted).

[31] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)) (citation omitted).

[32] *Id.* at 151-52 (citations omitted) (recognizing that the right to choice of counsel does not extend to defendants who require appointed counsel, and that trial courts have wide latitude in balancing the right to choice of counsel against needs of fairness and the demands of their calendar); *see also Norman v. State*, 2013 WL 6710794, at *2 (Del. Dec. 17, 2013) (citing *Bultron v. State*, 897 A.2d 758, 763 (Del. 2006)) ("In this case, the Superior Court granted Norman's motion for appointment of counsel and appointed Counsel to represent him.  Norman's subsequent dissatisfaction with his court-appointed counsel did not justify the appointment of different counsel in the postconviction proceedings, and it does not justify the appointment of different counsel on appeal.").

[33] *Gonzalez-Lopez*, 548 U.S. at 150 (citation omitted).

14

judgment in the civil racketeering case.[34] In other words, we are in a position where it must be accepted that the civil claims against Bradley were meritorious and he is left arguing that the Sixth Amendment somehow invariably precludes otherwise meritorious lien proceedings against criminal defendants, so the defendant can use his assets at will to fund his defense.

Bradley cites no relevant authority to support this novel argument. He relies primarily upon *United States v. Gonzalez-Lopez*.[35] There, the defendant argued on direct appeal to the United States Court of Appeals for the Eighth Circuit that the trial court had deprived him of his right to choice of counsel by erroneously denying that counsel's multiple applications for *pro hac vice* admission.[36] The government conceded on appeal to the United States Supreme Court that the trial court had erroneously deprived the defendant of his counsel of choice.[37] The only issue on appeal was whether the erroneous deprivation of the right to counsel of choice was a structural error requiring reversal.[38]

We would be reluctant to adopt Bradley's strained argument in any case, as it turns the Sixth Amendment into an asset shield for assets otherwise properly subject to liens and ultimate seizure, an argument that seems to have been firmly rejected by the United States Supreme Court.[39] But we need not reach a final determination on that issue

---

[34] Request for Entry of Default Judgment at Ex. 1, *State v. Bradley, et al.*, C.A. No. S10C-01-016 JRS (Del. Super. Aug. 25, 2011).
[35] 548 U.S. 140 (2006).
[36] *Id.* at 143-44.
[37] *Id.* at 144.
[38] *Id.*
[39] *See United States v. Monsanto*, 491 U.S. 600, 615 (1989) ("We conclude . . . that assets in a defendant's possession may be restrained in the way they were here based on a finding of probable cause to believe that the assets are forfeitable."); *Caplin & Drysdale, Chartered v.*

because Bradley did not fairly present the question below. The Superior Court never had the opportunity to consider whether the State's filing of the racketeering complaint and lien erroneously deprived him of his right to choice of counsel in the proceedings leading to his conviction. Because there can be no dispute that the State of Delaware provided Bradley with ample resources for his defense, Bradley has not pled a colorable claim of a miscarriage of justice. The Superior Court, therefore, did not err in denying Bradley's request for an evidentiary hearing on his assets, inability to retain his chosen counsel, and issues with respect to the racketeering complaint and racketeering lien.

## C.    *The Ineffective Assistance of Counsel Claims*

The remainder of Bradley's postconviction claims consist of ineffective assistance of trial counsel and appellate counsel claims. We agree with the Superior Court that the procedural bars of Rule 61(i) did not bar Bradley's claims of ineffective assistance of counsel except for those concerning his trial and appellate counsel's alleged failure to properly raise the issue of Detective Spillan's unlawful search. To prevail on his ineffective assistance of counsel claims, Bradley must establish that: (i) his counsel's representation fell below an objective standard of reasonableness; and (ii) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[40] "A reasonable probability is a probability

---

*United States*, 491 U.S. 617, 631 (1989) ("It is our view that there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense.").

[40] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

16

sufficient to undermine confidence in the outcome."[41]  Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[42]  Bradley must also set forth and substantiate "concrete allegations" of actual prejudice.[43]

Bradley first contends that his trial counsel was ineffective for failing to limit the Superior Court's consideration of the Motion to Suppress to the four corners of the search warrant.  According to Bradley, the Superior Court, in finding that the warrant authorized the search, relied upon testimony regarding an outbuilding identified as Building B that was outside the four corners of the search warrant.  The Superior Court concluded that Trial Counsel's strategic decision to allow testimony outside the four corners of the warrant in order to effectively challenge the manner in which the search was conducted did not fall below a standard of objective reasonableness.[44]  The Superior Court further concluded that Bradley did not show he was prejudiced by Trial Counsel's strategic decision because, even without the testimony, the Superior Court found that the warrant authorized the search of Building B.[45]

The Superior Court did not err in concluding that Bradley failed to show that his trial counsel was ineffective for failing to challenge testimony outside the four corners of the affidavit.  A motion to suppress was Bradley's only viable defense.  In the Motion to

---

[41] *Id.* at 694.
[42] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990) (citing *Strickland*, 466 U.S. at 689) (citation omitted).
[43] *Younger*, 580 A.2d at 555-56.
[44] *Bradley*, 2015 WL 3551898, at *5.
[45] *Id.* at *6 (citing *Bradley*, 2011 WL 1459177, at *5).

17

Suppress, Bradley's trial counsel challenged not only the search warrant, but also the manner in which the police conducted the search.[46] According to the affidavits submitted in the postconviction proceedings, Bradley's trial counsel determined that testimony outside the four corners of the search warrant was necessary for challenging how the police conducted the search.[47] This strategic decision did not fall below the *Strickland* standard of objective reasonableness.

Bradley also failed to show that he was prejudiced by his trial counsel's decision. Even without the challenged testimony, the Superior Court found that the information within the search warrant authorized the search of Building B. On appeal, this Court held that "[t]he Superior Court did not err in holding that the affidavit provided probable cause for the search" of Building B.[48] Bradley has not satisfied either of the *Strickland* prongs and, therefore, this ineffective assistance of trial counsel claim is without merit.

Bradley next contends that his appellate counsel was ineffective for failing to raise the Superior Court's consideration of evidence outside the four corners of the search warrant on appeal. The Superior Court rejected this claim, noting that appellate counsel's affidavit reflected that they "raised issues they believed to have the best chance of success on appeal."[49] Further, the Superior Court found that it would have been "inappropriate" for appellate counsel to second guess Trial Counsel's professionally

---

[46] *See* A232-A263.

[47] Affidavit of Robert M. Goff, Jr., Esquire at ¶ 2, *State v. Bradley*, 2015 WL 3551898 (Del. Super. June 5, 2015) (ID No. 091201155); Affidavit of Dean C. Johnson, Esquire at 2, *State v. Bradley*, 2015 WL 3551898 (Del. Super. June 5, 2015) (ID No. 091201155).

[48] *Bradley I*, 51 A.3d at 433.

[49] *Bradley*, 2015 WL 3551898, at *6 (internal quotation marks omitted).

18

reasonable decision not to challenge testimony outside of the warrant and argue a different position on appeal.[50] We agree. Bradley has not shown that appellate counsel's decision to make arguments on appeal that were consistent with the arguments made in the Superior Court fell below a standard of objective reasonableness. Nor has Bradley shown a reasonable probability of a different result if appellate counsel had taken a different position from Trial Counsel on appeal.[51] The Superior Court did not err in concluding that this ineffective assistance of appellate counsel claim was without merit.

Finally, Bradley contends that his trial counsel and appellate counsel ineffectively argued issues arising from Detective Spillan's alleged unguided search of a four gigabyte thumb drive seized from Building B. Bradley urges that this search was unconstitutional and emphasizes that Detective Spillan did not know the names of the children listed in the search warrant when he opened the first of seven deleted video files on the thumb drive. The Superior Court found that this claim was barred by Rule 61(i)(4) because Bradley was attempting to re-litigate an adjudicated claim as an ineffective assistance of counsel claim. We agree.

In the Motion to Suppress and accompanying briefs, Bradley's trial counsel challenged Detective Spillan's search of the thumb drive, contending that the search warrant did not authorize the opening of deleted videos where there was no indication

---

[50] *Id.*

[51] On appeal, this Court considered testimonial evidence in addressing the claim that the officers exceeded the scope of the warrant—not the probable cause analysis.

that the videos were patient files.[52]  After reviewing the manner in which Detective Spillan conducted his search of the thumb drive, the trial court found a sufficient nexus to support Detective Spillan's decision to open a deleted video file that was created on September 30, 2009, because "the file would have been created in close proximity to the time child 8 was being treated, and it was a video recording that would be consistent with the prior conduct of Dr. Bradley[,]"[53] including videotaping and photographing patients.

On appeal, Bradley's appellate counsel argued that Detective Spillan exceeded the scope of the warrant when he opened the September 30, 2009 video file because there was no indication that the file was related to any of the eight patients listed in the warrant.[54]  Appellate counsel emphasized that Detective Spillan did not know the names of the patients listed in the warrant when he searched the thumb drive and had no reason to believe that the September 30, 2009 video related to one of the eight patients.[55]  This Court affirmed the decision of the trial court.  In our decision, we stated:

> We refuse to interpret the warrant so narrowly as to hold that a digital file must have been labeled with the patient's name or the exact date of a confirmed visit, and kept in a traditional text format, to permit review in these circumstances.  The Superior Court properly found a sufficient nexus between the conduct alleged and the file searched to support Detective Spillan's decision to open the file.[56]

---

[52] A238-40; Opening Brief in Support of the Motion to Suppress at 32-33, *State v. Bradley*, 2011 WL 1459177 (Del. Super. Apr. 13, 2011) (ID Nos. 0912011155, 0912008771, 0912011621).
[53] *Bradley*, 2011 WL 1459177, at *12.
[54] *Bradley I*, 51 A.3d at 435.
[55] *See* Opening Brief in No. 476, 2011 at 23, *Bradley v. State*, 51 A.3d 423 (Del. 2012) (ID No. 0912011155); Reply Brief in No. 476, 2011 at 3, *Bradley v. State*, 51 A.3d 423 (Del. 2012) (ID No. 0912011155).
[56] *Bradley I*, 51 A.3d at 436.

Rule 61(i)(4) bars litigation of any claim that was previously adjudicated unless reconsideration of the claim is warranted in the interest of justice. "[A] defendant is not entitled to have a court re-examine an issue that has been previously resolved 'simply because the claim is refined or restated.'"[57] In arguing that his trial and appellate counsel ineffectively challenged Detective Spillan's search of the thumb drive, Bradley is simply repackaging his previous argument on direct appeal that Detective Spillan's search of the thumb drive exceeded the scope of the warrant.[58] Bradley has not shown that reconsideration of this argument is warranted in the interest of justice. Thus, the Superior Court did not err in finding that Rule 61(i)(4) barred Bradley's claim that his trial and appellate counsel ineffectively challenged Detective Spillan's search of the thumb drive.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.

---

[57] *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992) (quoting *Riley v. State*, 585 A.2d 719, 721 (Del.1990)).

[58] *See Chattin v. State*, 2012 WL 5844886, at *1 (Del. Nov. 16, 2012) (denying an ineffective assistance of counsel argument pursuant to *Strickland* in view of it being "more properly viewed" as a "refined or restated" version of a previously adjudicated claim).