IN THE SUPREME COURT OF THE STATE OF DELAWARE

MICAH O. CUFFEE, §
§
　Defendant Below, § No. 19, 2018
　Appellant, §
§ Court Below:  Superior Court
　v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 1209013919 (K)
§
　Plaintiff Below, §
　Appellee. §

Submitted:  March 15, 2019
Decided:　　May 6, 2019

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

## **ORDER**

Upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:

(1)　The defendant below-appellant, Micah O. Cuffee, has appealed the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61.  After careful consideration of the parties' briefs and the record, we affirm the Superior Court's judgment.

(2)　On August 7, 2013, a Superior Court jury found Cuffee guilty of Attempted Theft, Conspiracy in the Second Degree, and Criminal Mischief.  After granting the State's petition to declare Cuffee a habitual offender, the Superior Court sentenced Cuffee to eight years of Level V incarceration for Attempted Theft, two

years of Level V incarceration, suspended for one year of Level III probation, for

Conspiracy in the Second Degree, and a fine of $250 for Criminal Mischief.

(3) This Court affirmed Cuffee's convictions on direct appeal.[1] The Court

described the events leading to Cuffee's convictions as follows:

> On the night of September 19, 2012, a resident of a development located near Walker Road in Dover heard a vehicle, a screeching, metallic noise like something was being dragged, and voices outside the back of her townhouse. Office buildings, which were closed for the day, were located behind the caller's townhouse. The resident called 911 to report the noises at approximately 10:30 p.m. Corporal Gregory Hopkins and other members of the Dover police responded to the 911 call.
>
> Initially, Hopkins and the other police officers checked businesses and communities along Walker Road for the source of the reported noises. Hopkins checked 1155 Walker Road and did not see anything there. Hopkins then went to the 911 caller's townhouse and spoke to her about what she had heard in order to pinpoint the location of the noises. Based on that conversation, Hopkins drove back to 1155 Walker Road, which was located behind the townhouse.
>
> Hopkins walked around the building located at 1155 Walker Road and saw four, disconnected air conditioning units behind the building and near a shed. The air conditioners had been cut from the building located at 1155 Walker Road. Hopkins reported his findings and it was decided that he would stay in the area to conduct surveillance in case someone returned to pick up the disconnected air conditioners. Other officers set up a perimeter near Walker Road.
>
> Shortly after Hopkins concealed himself under some trees to monitor the area where the air conditioners were located, he observed a maroon minivan, with no headlights on, driving in from Walker Road. After driving into the parking lot that was closest to the disconnected air

---

[1] *Cuffee v. State*, 2014 WL 5254614, at *3-8 (Del. Oct. 14, 2014).

2

conditioners, the minivan began backing up over a bed of rocks near the air conditioners and became stuck.

Hopkins watched the minivan occupants attempt to remove the minivan from the rocks. They were unsuccessful and called somebody for assistance. Although Hopkins could see the occupants of the minivan walk around it, he could not see them at all times. Hopkins observed a white pick-up truck drive in from Walker Road and tow the minivan off of the rocks. Cuffee's cousin, Walter Cuffee, testified that Cuffee called him the night of September 19, 2012 for assistance. Walter Cuffee drove his white pick-up truck to Walker Road, where he testified that he picked up Cuffee and Mark McDonald, and then helped Cuffee and McDonald tow the minivan from the rocks. After Hopkins watched the white pick-up truck and maroon minivan leave the parking lot, he saw that the disconnected air conditioners were no longer where he had previously seen them. Hopkins radioed police units on Walker Road to report that the air conditioners had been taken and that both the white pick-up truck and maroon minivan should be stopped. Hopkins then walked around the area and saw that the air conditioners had been moved to the other side of the shed.

Police stopped the white pick-up truck and maroon minivan. Cuffee was driving the minivan and McDonald was the passenger. Both men were arrested. In a search of the minivan, the police found a pair of bolt cutters, Channellock pliers, a flashlight, and two pairs of work gloves. All of the seats, except for the driver seat and front passenger seat, had been removed from the minivan. Cuffee's daughter testified that she owned the minivan and that the equipment in the minivan belonged to her husband.[2]

(4)     On August 11, 2015, Cuffee filed a timely motion for postconviction relief. The motion was assigned to a Superior Court Commissioner. On October 28, 2015, Cuffee filed a motion to compel in which he sought to listen again to a CD

---

[2] *Id.* at *1-2.

of the 911 calls and police officers' radio communications from the night of his arrest. The State opposed the motion, arguing that Cuffee had already listened to the recordings during his direct appeal and had not established a basis to listen to the recordings again. The Commissioner denied Cuffee's motion.

(5) After Cuffee supplemented and amended his motion for postconviction relief, his former counsel filed affidavits in response, and the State responded to the motion, the Commissioner issued a report and recommendation on August 7, 2017. The Commissioner found that Cuffee failed to overcome the Rule 61 procedural bars and recommended denial of his motion for postconviction relief. Cuffee objected to the Commissioner's report and recommendation. On November 13, 2017, after *de novo* review of the record, the Superior Court accepted the Commissioner's report and recommendation and denied the motion for postconviction relief.[3] This appeal followed.

(6) We review the Superior Court's denial of postconviction relief for abuse of discretion, although we review questions of law *de novo*.[4] Both the Superior Court and this Court on appeal first must consider the procedural requirements of Rule 61 before considering the merits of any underlying postconviction claims.[5] The procedural bars of Rule 61 do not bar a timely claim of

---

[3] *State v. Cuffee*, 2017 WL 5606703 (Del. Nov. 13, 2017).
[4] *Claudio v. State*, 958 A.2d 846, 850 (Del. 2008).
[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

ineffective assistance of counsel.[6] Cuffee argues, as he did below, that the Superior Court erred: (i) in denying his motion to compel; (ii) in finding his claims of improper amendment of the indictment, prosecutorial misconduct, erroneous admission of photographs showing copper tubing, improper withholding of the recordings, and violation of his right to represent himself procedurally barred; and (iii) in finding that his counsel was not ineffective. Cuffee has waived appellate review of the other claims he raised below but he did not argue in his opening brief.[7]

(7) Cuffee argues that the Superior Court Commissioner should have granted the motion to compel because the recordings contain *Brady v. Maryland*[8] material (references to a vehicle near the crime scene with air conditioners and a man in a hoodie) relevant to his postconviction motion, it was more than two years since he last heard the recordings, and it would not be unduly burdensome for the State to arrange for him to listen to the recordings again. Cuffee raised the recordings on direct appeal, arguing that the State's failure to produce recordings of 911 calls and police officers' radio communications the night of September 19, 2012 was a violation of the State's discovery obligations and *Brady*. The Court granted,

---

[6] *Bradley v. State*, 135 A.3d 748, 759 (Del. 2016).

[7] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993). These claims included a police officer providing false information, ineffective assistance based on his counsel not filing a motion for a new trial within seven days, and the State withholding a traffic ticket issued to Cuffee and a police officer's notes.

[8] 373 U.S. 83 (1963).

over Cuffee's objections, the State's motion to expand the record to include a CD of the recordings, and the State arranged for Cuffee to hear the recordings.

(8) The Court addressed and rejected Cuffee's claims concerning the recordings on direct appeal. As to the alleged discovery violation, the Court assumed without deciding that Cuffee's discovery requests encompassed the recordings, but found that the failure to produce the recordings was not central to the case and Cuffee's substantial rights were not prejudicially affected.[9] The Court also found that Cuffee's *Brady* violation claim lacked merit.[10] In addressing references on the recordings to other vehicles less than two miles from the crime scene that could or were carrying air conditioners, we held:

> As far as the police officers' observation of a truck with a tarp on Route 8 while Hopkins was watching the maroon minivan become stuck on rocks near the disconnected air conditioners or the possible sighting of a vehicle with an air conditioner while Cuffee was being arrested (and while the air conditioners at issue were still at 1155 Walker Road), this information essentially amounts to the existence of other vehicles that could transport or were transporting air conditioners. Unlike the maroon minivan driven by Cuffee, these vehicles were not observed near the disconnected air conditioners at 1155 Walker Road after a nearby resident heard voices and dragging noises. The existence of these other vehicles adds little to Cuffee's defense.[11]

---

[9] *Cuffee*, 2014 WL 5254614, at *6-7.

[10] *Id.* at *7 (finding that the recordings were not exculpatory or impeaching of the police witnesses' testimony and that the suppression of the recordings did not undermine confidence in the outcome of the trial).

[11] *Id.* The man in the hoodie was with the truck on Route 8, not walking near the disconnected air conditioners as Cuffee suggests.

Cuffee seeks to listen to the recordings again so he can raise claims that this Court has already rejected. Rule 61(i)(4) bars any claim that was formerly adjudicated. Under these circumstances, the Superior Court did not err in denying Cuffee's motion to compel.

(9) The Superior Court also did not err in finding that Cuffee's claims concerning the amendment of the indictment, the prosecutor's statements about when Cuffee was at 1155 Walker Road and the theft of air conditioners, the violation of his right to represent himself, and the withholding of the audio recordings, were barred by Rule 61(i)(4). This Court addressed, and rejected, all of these claims on direct appeal.[12] Rule 61(i)(4) does not apply to a claim that the Superior Court lacked jurisdiction or that satisfies Rule 61(d)(i) (new evidence that creates a strong inference of actual innocence) or 61(d)(ii) (a new rule of constitutional law renders the conviction invalid),[13] but Cuffee has failed to show that any of these exceptions apply here.

(10) As recognized by the Superior Court, many of Cuffee's remaining claims are barred by Rule 61(i)(3). Rule 61(i)(3) bars any claim that was not asserted

---

[12] *Id.* at *2-8 (affirming the amendment of the indictment, finding no prosecutorial misconduct based on statements regarding when Cuffee was at the crime scene and the harvesting of air conditioners, holding Cuffee was not entitled to reversal of his convictions assuming there was a discovery violation, deciding that the *Brady* claims were without merit, and concluding that Cuffee waived his right to represent himself).

[13] Super. Ct. Crim. R. 61(i)(5).

in the proceedings leading to the judgment of conviction unless the movant shows cause for relief from the procedural default and prejudice from a violation of the movant's rights. Cuffee's counsel objected to the introduction of photographs showing copper tubing in the minivan at trial, but Cuffee failed to raise this issue on direct appeal. He has not shown cause for the procedural default.

(11) Cuffee also makes several prosecutorial misconduct claims that he did not raise at trial or on appeal. These claims include: (i) the prosecutor introduced Channellocks into evidence that were not found in the minivan as a police officer testified; (ii) the prosecutor stated that the bolt cutters found in the minivan were functional, but failed to show their functionality;[14] (iii) three pairs of gloves were found in the minivan, but the prosecutor only introduced two pairs into evidence; and (iv) the prosecutor failed to introduce a notebook found in the minivan into evidence. Cuffee makes no effort to show cause for the failure to raise the claims concerning the functionality of the bolt cutters. That claim is therefore barred by Rule 61(i)(3). Cuffee asserts ineffective assistance of counsel to overcome the Rule 61(i)(3) procedural bar for the claims concerning the Channellocks, gloves, and notebook, which we address along with his other ineffective assistance counsel

---

[14] The prosecutor invited the jurors to look at and handle the bolt cutters during their deliberations.

claims below. Attorney error short of ineffective assistance of counsel does not constitute cause for procedural default.[15]

(12)    To prevail on his ineffective assistance of counsel claims, Cuffee must establish that: (i) his counsel's representation fell below an objective standard of reasonableness; and (ii) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[16] Although not insurmountable, the *Strickland* standard is highly demanding and subject to a "strong presumption that the representation was professionally reasonable."[17]    The defendant must also set forth and substantiate concrete allegations of actual prejudice.[18]

(13)    Cuffee argues that his counsel was ineffective because he: (i) failed to investigate or object to the prosecutor's mishandling of evidence as discussed above; (ii) failed to request a continuance to review the audio recordings and use those recordings at trial; (iii) failed to move for a mistrial based on the cumulative effect of the missing gloves and notebook, the introduction of Channellocks that were not found in the minivan, and the withholding of the recordings; and (iv) failed to request

---

[15] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[16] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[17] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).
[18] *Younger*, 580 A.2d at 556.

the removal of a juror that the prosecutor recognized. The Superior Court did not err in finding Cuffee failed to show his counsel was ineffective.

(14) First, the record does not support Cuffee's claim that the prosecutor introduced Channellocks into evidence that were not found in the minivan as a police officer testified. This claim is based on Cuffee's contention that the Channellocks do not appear in the police reports, the intake form referenced in the State's discovery responses under Rule 16, or photographs of the van interior. But the State's discovery responses stated that the intake form might not list all physical evidence (which was also available for inspection), and the Channellocks do appear in one of the van interior photographs (State Exhibit 21). Cuffee has not shown there was any prosecutorial misconduct for his attorney to investigate or note an objection. Nor has Cuffee shown that his counsel had any basis to object to the State not introducing the notebook into evidence at trial.

(15) As to the gloves, Cuffee's trial counsel stated in his affidavit that he did not challenge the number of gloves introduced at trial versus the number of gloves found in the minivan because he was concerned that the jury might view that as reaching for straws and it made more sense to rely on the location of the gloves (under the bolt cutters instead of on top of the bolt cutters as one would expect). Cuffee claims that the third pair of gloves would have supported his claim that the minivan belonged to his son-in-law. But another pair of gloves would simply have

10

been cumulative of his daughter's testimony that the minivan, tools, and gloves in the minivan belonged to her husband who used the minivan for his masonry work. Cuffee has not shown a reasonable probability that introduction of another pair of gloves into evidence would have resulted in a different outcome.

(16) As to the recordings, Cuffee's counsel explained in his affidavit that he did not learn of the recorded communications among the police officers until his cross-examination of one of the officers at trial. He felt that the evidence presented so far was circumstantial at best and that asking for a continuance to review the recordings might prejudice the jury against Cuffee. After trial he reviewed the recordings and concluded that there was nothing of value for the defense.

(17) This Court reached a similar conclusion on direct appeal. We concluded that the recordings were consistent with the police officers' testimony at trial, and that even if there was information "marginally favorable" to the defense (the existence of other vehicles that could transport or were transporting air conditioners), confidence in the outcome of the trial was not undermined.[19] It was the maroon minivan that Cuffee was driving, not the other vehicles, that was seen near the disconnected air conditioners at 1155 Walker Road. Cuffee has not shown a reasonable probability of a different result if the recordings had been introduced at

---

[19] *Cuffee*, 2014 WL 5254616, at *7.

11

trial. In light of our rulings regarding the Channellocks, the third pair of gloves, the notebook, and the recordings, Cuffee has not shown that his trial counsel had any basis to move for a mistrial for cumulative error.

(18) Finally, Cuffee argues that his trial counsel was ineffective for failing to request the removal of a juror recognized by the prosecutor. On the second day of trial, the prosecutor informed the Superior Court that he recognized one of the jurors from a gym he belonged to in the late 1990s and early 2000s. The prosecutor stated that they would speak at the gym. At the request of Cuffee's counsel, the Superior Court asked the juror separately if he recognized the prosecutor or defense counsel from anywhere other than the trial. The juror responded that he did not. Cuffee's counsel agreed with the Superior Court that there was nothing further to pursue.

(19) In his affidavit, Cuffee's counsel states that the juror did not recognize the prosecutor and would have been replaced by an alternate who worked for law enforcement, which Cuffee disputes. Cuffee also argues that his counsel should have sought the juror's removal because that is what Cuffee wanted. Given the amount of time since the prosecutor had apparently last interacted with the juror and the fact that the juror did not recognize the prosecutor, counsel's decision not to seek removal of the juror fell within the range of reasonable professional assistance.

12

Cuffee did not have the right to dictate trial strategy.[20]  Having carefully considered the parties' positions, we conclude that the Superior Court did not err in denying Cuffee's motion for postconviction relief.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[20] *Gunter v. State*, 2016 WL 2765360, at *3 (Del. May 9, 2016) (recognizing that criminal defendant does not have a right to dictate trial strategy); *Zimmerman v. State*, 2010 WL 546971, at *2 (Del. Feb. 16, 2010) (recognizing that criminal defendant has a right to counsel, but not a right to counsel who will not disagree on trial strategy and that counsel is not obligated to obtain the defendant's consent to every tactical decision).