IN THE SUPREME COURT OF THE STATE OF DELAWARE

WILSON VELEZ, § 
                          §

     Defendant Below,       § No. 60, 2026
     Appellant,           §

                          § Court Below—Superior Court
     v.                   § of the State of Delaware
                          §

STATE OF DELAWARE,    § Cr. ID Nos. 2212006162
                          §             2303008901 (N)
     Appellee.            §

Submitted: April 10, 2026
Decided:   May 15, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the appellant's opening brief, the State's motion to affirm, and the record on appeal, it appears to the Court that:

(1) The appellant, Wilson Velez-Santiago, appeals from the Superior Court's denial of his motion for postconviction relief. The State has filed a motion to affirm the Superior Court's judgment on the ground that it is manifest on the face of Velez-Santiago's opening brief that the appeal is without merit. We agree and affirm.

(2) Velez-Santiago was charged with attempted first-degree murder and other crimes arising from a shooting that occurred at a bar in Wilmington shortly after midnight on October 19, 2022. Cameras that were located inside and outside

the bar captured the incident. The video from inside the bar showed a suspect firing at least two rounds from a handgun at Andrew Brainard, striking Brainard in the shoulder or torso. The exterior video showed the suspect chasing Brainard and another person into the parking lot, firing two more rounds at them, and then fleeing the scene in a vehicle.

(3) Analyzing the videos with "[s]oftware that is available to law enforcement," the investigating detective, Detective Bange, identified Velez-Santiago as a suspect.[1] After determining that Velez-Santiago was on parole in Pennsylvania, Detective Bange contacted Velez-Santiago's parole officer, Ashley Natale, and provided her with still photographs and videos from the incident.[2] Officer Natale confirmed that the suspect was Velez-Santiago.[3] Detective Bange then obtained a warrant for Velez-Santiago's arrest.

(4) In October 2023, Velez-Santiago pleaded guilty to first-degree assault, as a lesser-included offense of attempted first-degree murder; first-degree reckless endangering; and possession of a deadly weapon by a person prohibited.[4] The Superior Court later sentenced him to a total of fifty-three years of imprisonment,

---

[1] Motion to Affirm Exhibit D (arrest warrant and affidavit). Velez-Santiago describes the technology at issue as facial recognition software.

[2] *Id.*

[3] *Id.*

[4] Velez-Santiago also pleaded guilty to assault in a detention facility, resolving a separate set of charges arising from his assault on a correctional officer while he was in custody pending resolution of the charges arising from the shooting.

suspended after sixteen years for decreasing levels of supervision. Velez-Santiago did not file a direct appeal.

(5) In September 2024, Velez-Santiago filed a motion for postconviction relief, which he subsequently amended. A Superior Court Commissioner reviewed Velez-Santiago's claims and found two of them procedurally barred under Superior Court Rule of Criminal Procedure 61(i)(3) and the others meritless. A Superior Court judge considered Velez-Santiago's objections to the Commissioner's report and denied his motion for postconviction relief.

(6) Velez-Santiago now appeals to this Court. He argues that his counsel provided ineffective assistance by not seeking to suppress Officer Natale's identification of Velez-Santiago on the basis that the identification procedure was improperly suggestive. He contends that his counsel also should have sought suppression of clothing and ammunition because, without Officer Natale's identification, the search warrants that yielded the evidence lacked probable cause to support searches of his home and vehicle. Finally, he argues that the Superior Court erred by finding that Velez-Santiago waived those ineffective-assistance claims by pleading guilty, because counsel incorrectly described the shooting video as high quality and advised him that he had no possible defenses, when he could have asserted the arguments described above.

(7)     This Court reviews the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[5] We review legal or constitutional questions, including claims of ineffective assistance of counsel, *de novo*.[6] Courts consider the procedural requirements of Rule 61 before addressing substantive issues.[7] The Superior Court correctly concluded that Velez-Santiago's ineffective-assistance claims are not procedurally barred in this first postconviction proceeding.[8]

(8)     Because Velez-Santiago pleaded guilty, to prevail on his claims of ineffective assistance of counsel he was required to demonstrate that (i) his counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.[9] To "eliminate the distorting effects of hindsight," there is a strong, but not insurmountable, presumption that counsel's representation was professionally reasonable.[10]

(9)     Velez-Santiago first argues that counsel provided ineffective assistance by advising him that a guilty plea was his best course of action, rather than

---

[5] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[6] *Id.*
[7] *Bradley v. State*, 135 A.3d 748, 756-57 (Del. 2016).
[8] *See Green v. State*, 238 A.3d 160, 175 (Del. 2020) ("[I]neffective-assistance claims are not subject to Rule 61(i)(3)'s bar because they cannot be asserted in the proceedings leading to the judgement of conviction under the Superior Court's rules and this Court's precedent.").
[9] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Duffy v. State*, 2019 WL 459982, at *2 (Del. Feb. 5, 2019); *Albury v. State*, 551 A.2d 53, 59-60 (Del. 1988).
[10] *Albury*, 551 A.2d at 59.

4

challenging the arrest warrant on the basis that the process by which Detective Bange obtained Officer Natale's identification of Velez-Santiago was improperly suggestive. Citing case law involving identifications by law enforcement officers, the Superior Court Commissioner determined that the identification of Velez-Santiago by his parole officer was reliable and "confirmatory" rather than "selective," and Velez-Santiago had therefore failed to demonstrate that counsel was ineffective for failing to file a motion to suppress the identification.[11] Velez-Santiago argues that the parole officer's identification was insufficiently reliable because she purportedly identified him based on a neck tattoo that was not depicted in the still photographs that she viewed.[12] And he challenges the determination that the identification was a permissible "confirmatory" identification, citing case law from other jurisdictions in which courts reversed post-trial convictions based on identification by law enforcement officers given in overly suggestive circumstances.

(10) Whether the arrest warrant was based on an improperly suggestive identification or not, Velez-Santiago has not demonstrated deficient performance and prejudice. "[A]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."[13] Velez-Santiago's

---

[11] *State v. Velez*, 2025 WL 2630838, at *6-7 (Del. Super. Ct. Sept. 12, 2025).

[12] As noted above, the arrest warrant and affidavit indicate that Detective Bange showed Officer Natale still photographs and videos.

[13] *Smith v. State*, 2004 WL 120530 (Del. Jan. 15, 2004) (quoting *United States v. Crews*, 445 U.S. 463, 474 (1980), and affirming denial of motion for postconviction relief following guilty plea, in which defendant sought to vacate conviction on the basis that arrest was invalid because his

arguments concerning the identification procedure leading to his arrest therefore do not overcome the strong presumption that counsel's decision not to challenge the arrest warrant was professionally reasonable, nor do they show that there is a reasonable probability that some different approach by counsel would have resulted in Velez-Santiago's insisting on going to trial.

(11) Next, Velez-Santiago asserts that his counsel should have sought suppression of evidence obtained through searches of his home and vehicle because, without Officer Natale's identification, the search warrants lacked probable cause to support the searches. He contends that without the additional evidence—clothing and ammunition—the only evidence available for trial would have been the surveillance videos, "without any means of identifying" the shooter.[14] These arguments appear to be more nuanced and detailed than those presented to the Superior Court. Moreover, they rely on (i) speculation that, without the clothing and ammunition, the only evidence at trial would have been the videos, and (ii) a self-serving contention that the videos were insufficient for a jury to independently

---

arresting officer was not a U.S. citizen and therefore should not have been acting as a police officer); *see also Crews*, 445 U.S. at 474 ("[Defendant] is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.").

Notably, none of the cases on which Velez-Santiago bases his identification arguments appear to involve challenges to an arrest warrant after a guilty plea; rather they involve the admissibility of identification testimony at trial.

[14] Opening Brief at 26.

identify Velez-Santiago.[15] We therefore conclude that Velez-Santiago has not demonstrated that there is a reasonable probability that he would not have pleaded guilty if counsel had filed a motion to suppress.

(12) For similar reasons, Velez-Santiago has not shown that any arguable grounds for suppression he might have had were so meritorious that counsel's advice regarding a guilty plea—or Velez-Santiago's decision to plead guilty—would have changed. In short, he has not demonstrated that postconviction relief is warranted.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED and the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[15] After the State filed its motion to affirm, Velez-Santiago filed a motion for leave to respond. He asserts that the shooting videos are not in the record and therefore should not be considered by the Court. The motion is granted to the extent that the Court has considered the arguments made in the motion and has not viewed the shooting videos. We note that Velez-Santiago admits in his motion that, like Velez-Santiago, the shooter in the video "does appear to have some sort of neck tattoo," though he asserts that it is not "clearly and fully depicted" and not "clear enough for one to be able to compare to a specific tattoo." Velez-Santiago could have made that argument to a jury, but he elected to plead guilty rather than putting the evidence to a fact finder at trial.

7