IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL T. WASHINGTON, | § | |
| | § | |
| Defendant Below, | § | No. 537, 2016 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 0909018475A&B |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: February 24, 2017
Decided: April 28, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 28th day of April 2017, upon consideration of the parties' briefs and the record below,[1] it appears to the Court that:

(1) The appellant, Michael T. Washington, filed this appeal from the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61. We find no merit to the appeal and affirm the Superior Court's judgment.

---

[1] We do not consider the three letters of arguments the appellant filed after he filed his reply brief. Supr. Ct. R. 15(a)(vi) (providing that other than the opening brief and reply brief, the appellant shall not file any other writing with argument without leave of the Court).

(2)     The record reflects that, in September 2009, a New Castle County grand jury charged Washington by indictment with two counts of Murder in the First Degree, two counts of Attempted Robbery in the First Degree, two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), and one count of Possession of a Firearm by a Person Prohibited ("PFBPP"). The charges arose from the fatal shooting of Leighton Francis and Amin Guy in Wilmington. The bodies of Francis and Guy were discovered on September 1, 2008 in the driver's seat and front passenger seat of a bullet-ridden car in the 500 block of East 10th Street.

(3)     After a nine day trial, a jury found Washington guilty of two counts of the lesser included offense of Manslaughter and two counts of PFDCF. The jury found Washington not guilty of Attempted Robbery in the First Degree. In a separate bench trial, the Superior Court found Washington guilty of PFBPP. Washington was sentenced to sixty-four years of non-suspended Level V time, followed by decreasing levels of supervision. On direct appeal, this court affirmed Washington's convictions and sentence.[2]

(4)     On March 7, 2012, Washington filed his first motion for postconviction relief under Rule 61. At the direction of a Superior Court Commissioner, Washington's former counsel filed affidavits in response to the motion. On May 8,

_____

[2] *Washington v. State*, 2011 WL 4908250 (Del. Oct. 24, 2011).

2

2012, Washington filed a motion to amend his postconviction motion. The Commissioner granted the motion.

(5) On August 7, 2012, Washington filed his amended motion for postconviction relief. Washington's former counsel filed affidavits in response to the motion. The State filed its response to Washington's motion on October 31, 2012. Washington filed a response to the affidavits and the State's response.

(6) On February 25, 2013, Washington filed a motion for appointment of counsel. The Superior Court initially denied the motion, but then granted the motion after this Court's order in *Holmes v. State*.[3] Several attorneys appointed to represent Washington withdrew after discovering conflicts. On July 17, 2015, the last attorney appointed to represent Washington filed a motion to withdraw under Rule 61(e). Washington filed multiple documents in response. At the Commissioner's request, Washington's counsel provided additional information regarding his motion to withdraw.

(7) On March 2, 2016, the Commissioner granted Washington's request to file an amended postconviction motion. In a letter dated March 20, 2016, Washington asserted three supplemental claims. Washington directed the Commissioner to review only the four claims raised in the amended motion for

_____

[3] 2013 WL 2297072 (Del. July 11, 2013) (holding Superior Court erred in denying the defendant's motion for appointment of counsel in Rule 61 proceedings).

3

postconviction relief he filed on August 12, 2012 and the three supplemental claims raised in the March 20, 2016 letter. The Commissioner gave the State the opportunity to respond to Washington's supplemental claims, but the State chose not to respond. Although the Commissioner stated he would not allow additional submissions from Washington, Washington continued to submit letters regarding his claims.

(8)  In a report and recommendation dated September 27, 2016, the Commissioner recommended denial of Washington's motion for postconviction relief and granting of his counsel's motion to withdraw.[4] Washington filed objections to the report. The Superior Court adopted the report and recommendation of the Commissioner, denied the motion for postconviction relief, and granted the motion to withdraw.[5] This appeal followed.

(9)  This Court reviews the Superior Court's denial of postconviction relief for abuse of discretion and questions of law *de novo*.[6] Issues that Washington fails to raise in his opening brief or that he attempts to incorporate by reference to his

---

[4] *State v. Washington*, 2016 WL 5407852 (Del. Super. Ct. Sept. 27, 2016).

[5] *State v. Washington*, 2016 WL 6248462 (Del. Super. Ct. Oct. 19, 2016).

[6] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

Superior Court filings are waived.[7]   The Court must consider the procedural requirements of Rule 61 before addressing any substantive issues.[8]

(10)   At the time Washington filed his motion for postconviction relief in March 2012, Rule 61[9] provided that a claim was procedurally barred if: (i) the motion for postconviction relief was filed more than one year after the final judgment of conviction;[10] (ii) the claim was not asserted in a previous postconviction proceeding, unless consideration of the claim is warranted in the interest of justice;[11] (iii) the claim was not asserted in the proceedings leading to conviction, unless the movant shows cause for relief from the procedural default and prejudice from violation of the movant's rights;[12] or (iv) the claim was formerly adjudicated, unless reconsideration of the claim is warranted in the interest of justice.[13]   The procedural bars of Rule 61(i)(1), (i)(2), and (i)(3) do "not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of

---

[7] Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal."); *Ploof v. State*, 75 A.3d 840, 866 (Del. 2013) (holding defendant waived issues that were incorporated by reference to Superior Court briefing).   Waived claims include Washington's conclusory claim, with incorporation of a letter to the Superior Court by reference, that his trial counsel was ineffective for failing to raise all of the arguments he wanted to make on direct appeal.

[8] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[9] Rule 61 was amended effective June 4, 2014.   The Court applies the version of Rule 61 in effect at the time Washington filed his pro se motion. *See Bradley v. State*, 135 A.3d 748, 757 n.24 (Del. 2016).

[10] Super. Ct. Crim. 61(i)(1) (2012).

[11] Super. Ct. Crim. 61(i)(2).

[12] Super. Ct. Crim. 61(i)(3).

[13] Super. Ct. Crim. 61(i)(4).

5

a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[14]

(11) On appeal, Washington first argues that the Superior Court erred in denying his claim that his counsel was ineffective for failing to move to suppress the out of court statements of two State witnesses. The procedural bars of Rule 61(i) did not bar Washington's timely claims of ineffective assistance of counsel. To prevail on his ineffective assistance of counsel claims, Washington must demonstrate: (a) his counsel's conduct fell below an objective standard of reasonableness; and (b) but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[15] Although not an insurmountable standard, there is a strong presumption that counsel's representation was professionally reasonable.[16] "A reasonable probability that the outcome would have been different is a probability sufficient to undermine confidence in the outcome."[17] Washington must set forth and substantiate "concrete allegations" of actual prejudice.[18]

(12) Washington argues his counsel was ineffective for failing to: (i) move to suppress Isaiah Fields' statement to the police that he saw Washington fire a gun

---

[14] Super. Ct. Crim. R. 61(i)(5).
[15] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[16] *Id.* at 689.
[17] *Id.* at 694.
[18] *Younger*, 580 A.2d at 556.

6

at 930 Spruce Street similar to the gun used in the shooting of Francis and Guy because this was inadmissible as a prior bad act under Delaware Uniform Rule of Evidence ("D.R.E.") 404(b), unfairly prejudicial under D.R.E. 403, and in violation of 11 *Del C.* § 3507; and (ii) move to suppress William Coleman's statements and letters to the police about what Washington told him regarding the shooting under D.R.E. 404(b) and 11 *Del C.* § 3507. Washington has not satisfied *Strickland* and therefore his ineffective assistance of counsel claims are without merit.

(13) Fields testified at trial that Washington told him while they were both at the same prison that he unintentionally killed Francis and Guy with a MAC-10 in a robbery or drug deal that went wrong. Fields also testified that he saw Washington accidentally fire a MAC-10 at 930 Spruce Street a few months before Francis and Guy were killed. In late 2009, Fields gave this information to the police investigating the crimes. Based on Fields' information about the MAC-10, a detective obtained a search warrant for 930 Spruce Street and found bullets in the floor.

(14) Coleman testified at trial that Washington told him while they were both at the same prison that he shot the victims from the back seat of a car with a MAC-10 in a robbery that went wrong, he disposed of the MAC-10 used in the shooting, and April Gardner had witnessed the shooting. Based on Coleman's

7

information, the police contacted and interviewed Gardner. The letters Coleman wrote to the police with this information were admitted into evidence.

(15) As to D.R.E. 403, which provides relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, the Commissioner found that Fields' testimony about seeing Washington with a MAC-10, a candidate weapon in the shooting, was highly relevant.[19] The Commissioner acknowledged the evidence was prejudicial to Washington's case, but correctly found it was not unfairly prejudicial under D.R.E. 403.[20] The Superior Court did not err in concluding that the lack of a motion to suppress or objection under D.R.E. 403 by Washington's counsel was professionally reasonable. Contrary to Washington's contention, the Commissioner did not find the lack of a motion to suppress this evidence prejudicial to Washington under *Strickland*.[21]

(16) As to D.R.E. 404(b), which provides evidence of other crimes or acts is not admissible to show the character of a person in order to show action in conformity therewith, but may be admissible for other purposes such as opportunity, the Commissioner concluded Fields' testimony about seeing Washington with a MAC-10 was properly offered to show Washington had possessed the same type of

---

[19] *State v. Washington*, 2016 WL 5407852, at *5.
[20] *Id.*
[21] *Id.* (concluding Fields' testimony about MAC-10 was prejudicial in context of D.R.E. 403, not *Strickland*).

8

weapon used in the shooting, not that he had a general criminal disposition.[22] Washington does not identify the prior bad acts he claims were in Coleman's letters. The Superior Court did not err in accepting the Commissioner's conclusion that the lack of a motion to suppress or objection under D.R.E. 403 or D.R.E. 404(b) by Washington's counsel was professionally reasonable.

(17) As to Section 3507, which governs the admissibility of prior out of court statements, the State did not introduce Fields' and Coleman's interviews with police into evidence at trial. Washington's counsel used Coleman's letters in order to expose inconsistencies between his version of events in the letters and his trial testimony, as well as his strongly-expressed desire for a deal in exchange for providing information about the shooting. Even assuming Washington's counsel could have objected to Coleman's letters under Section 3507, Washington has not shown a reasonable probability of a different outcome if the letters (or other challenged, out of court statements) had not been admitted. There was significant additional evidence presented at trial about Washington's role in the shooting, including Gardner's eyewitness testimony and Fields, Coleman, and Christopher Waterman's trial testimony that Washington admitted to killing Francis and Guy. The Superior Court did not err, therefore, in denying this ineffective assistance of counsel claim.

---

[22] *Id.*

9

(18) Washington next argues the Superior Court erred in denying his claim that the prosecutor misled the jury by failing to disclose Waterman, who testified Washington told him while they were both at the same prison that he accidentally shot Francis and Guy during an attempted robbery, was guaranteed leniency under U.S. Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553 due his federal plea agreement and his testimony against Washington. The Superior Court accepted the Commissioner's recommendation that this claim was procedurally barred under Rule 61(i)(3). According to Washington, this claim is not procedurally barred due to his failure to raise it at trial or on direct appeal because the prosecutor's misconduct constitutes a miscarriage of justice under Rule 61(i)(5).

(19) As the Commissioner recognized, Waterman's motivation to testify against Washington was explored extensively at trial.[23] Washington's counsel introduced Waterman's plea agreement into evidence and cross-examined Waterman about his hopes that federal prosecutors would recommend a reduction in his sentence for federal weapon charges due to his cooperation with authorities in Washington's case. The plea agreement reflected that if the government determined in its sole discretion Waterman had fulfilled his obligations of cooperation, the government would file a motion for a downward departure from the sentencing guidelines under U.S. Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e).

---

[23] *Id.* at *6.

10

Contrary to Washington's contentions, neither Section 5K1.1 nor Section 3553(e) guaranteed Waterman sentencing leniency in exchange for his testimony.[24] Washington has not pled a colorable miscarriage of justice claim and therefore has not overcome the procedural bars of Rule 61.

(20) Washington next argues the Superior Court erred in denying his claim the prosecutor committed misconduct by arguing, in the absence of physical evidence of a robbery, that the shooting was the result of a robbery gone wrong. The Superior Court accepted the Commissioner's recommendation that this claim was procedurally barred under Rule 61(i)(3). Washington contends this claim is not procedurally barred due to his failure to raise it at trial or on direct appeal because the prosecutor's misconduct constitutes a colorable miscarriage of justice claim under Rule 61(i)(5).

(21) Washington has not pled a colorable claim of a miscarriage of justice under Rule 61(i)(5). As the Commissioner recognized, the State introduced evidence to support its robbery theory of the case.[25] The fact that the jury found Washington not guilty of attempted robbery does not mean there was any prosecutorial misconduct. Washington also claims for the first time on appeal the

---

[24] 18 U.S.C. § 3553(e) (providing district court has authority to impose less than minimum sentence upon motion by the government); U.S.S.G. § 5K1.1 ("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court *may* depart from the guidelines.") (emphasis added).

[25] *State v. Washington*, 2016 WL 5407852, at *6.

11

absence of the gun meant the prosecutor committed misconduct by telling the jury the gun used to kill Francis and Guy was the same gun Fields saw Washington with at 930 Spruce Street several months earlier. We will not consider this claim for the first time on appeal.[26]

(22) Washington next contends the Superior Court erred in accepting the Commissioner's recommendation that his claim of plain error based on a detective's testimony as an expert about the State's forensic evidence was procedurally barred. Washington argues this claim is not procedurally barred because his counsel was ineffective and the detective's testimony as an expert constitutes a miscarriage of justice under Rule 61(i)(5). In his postconviction motion, Washington based this claim upon the detective's testimony concerning fingerprint and DNA evidence in the car. On appeal, Washington now claims the detective testified as an expert about bullets and bullet holes he found at 930 Spruce Street without performing a trajectory rod test to determine where the shooting took place. The detective testified he found bullet holes and projectiles in the floor and basement under a wall Fields said Washington shot with a gun. We will not consider this claim for the first time on appeal.[27]

---

[26] Supr. Ct. R. 8. We note the prosecutor's argument was supported by the testimony of Fields and the testimony of the State's ballistics expert regarding the bullets discovered in the car, the victims' bodies, and at 930 Spruce Street.
[27] Supr. Ct. R. 8.

12

(23) As to Washington's claim that the detective improperly testified as an expert about the identification of fingerprints in the car and the meaning of the term "swabbing" in the context of DNA evidence, he has not pled a claim of ineffective assistance or a colorable claim of a miscarriage of justice under Rule 61(i)(5). After the detective testified that certain fingerprints in the car matched the fingerprints of one of the victims and a friend of that victim, Washington's counsel objected to the detective testifying as an expert. The State said it would call an expert on the fingerprint identification, which, as Washington concedes on appeal, it did. There was no objection to the detective's testimony concerning the meaning of the term "swabbing." The State did not offer DNA evidence tying Washington to the car. The lack of DNA and fingerprint evidence tying Washington to the car supported his testimony that he was not in the car at the time of the shooting. Washington has not shown he suffered any prejudice from the detective's testimony or his counsel's handling of this testimony. The Superior Court did not err in denying this claim.

(24) Washington next claims the Superior Court erred in denying his claim that the prosecutor misstated the evidence when she told the jury: (i) April Gardner testified Washington got into the back passenger side seat of the car moments before the car windows erupted; (ii) the State's ballistic expert, Carl Rone, testified that if more than one person had been present in the back seat of the car, that person would have been shot. The Superior Court accepted the Commissioner's recommendation

13

that Washington failed to plead an ineffective assistance of counsel claim. Washington argues his counsel was ineffective for failing to object to the prosecutor's misstatements and the prosecutor's misstatements constitute a colorable miscarriage of justice under Rule 61(i)(5).

(25) Gardner testified that she saw a car, with a man sitting in the driver's seat, parked in front of her house. Gardner saw Washington, who she knew, and an unknown man approach the car. The unknown man entered the passenger side of the car while Washington sat on the steps of the house next door to Gardner's house. The unknown man then got out the car and spoke to Washington. Gardner testified that Washington then got in the back seat of the car and the unknown man got in the passenger side. A prosecutor may make logical implications based upon the evidence presented at trial.[28] The Superior Court did not err in accepting the Commissioner's conclusion that it was reasonably inferable from Gardner's testimony and view of the car that Washington got into the back passenger side of the car.

(26) As to Rone's testimony, he testified that the shooter was seated in the back passenger side seat, but did not testify that if anyone other than the shooter had been in the back seat of the car, that person would have been shot. The evidence presented at trial did reflect that the interior of the car was riddled with bullet holes.

---

[28] *Burns v. State*, 76 A.3d 780, 790 (Del. 2013).

14

Evan assuming it was not inferable from Rone's testimony that another person in the back seat would have been shot, Washington has not pled an ineffective assistance of counsel claim or a colorable claim of a miscarriage of justice. The possible existence of another person in the back seat with the shooter was irrelevant to the defense presented at trial.

(27) At trial, Washington testified that he was at 930 Spruce Street, not the car, at the time of the shooting. He also testified he gave a gun that had accidentally discharged at 930 Spruce Street to Gardner's then-boyfriend, who was interested in buying it, the evening of the shooting. During cross-examination and closing arguments, Washington's counsel suggested Gardner's then-boyfriend shot Francis and Guy. The possibility of another person with the shooter in the back seat of the car has no relevance to Washington's defense that he was not present during the shooting. Washington has not shown his trial counsel's lack of objection was professionally unreasonable or a reasonable probability of a different outcome if his trial counsel had objected to the prosecutor's statements. The Superior Court did not err in denying this claim.

(28) Washington next claims the Superior Court erred in denying his claim that the prosecutor falsely told the jury in her opening and closing statements that Rone would testify, and did testify, that bullets and bullet fragments recovered from the car, the victims, 930 Spruce Street, and the street in front of Gardner's house

15

were fired from the same gun. The Superior Court accepted the Commissioner's recommendation that this claim was procedurally barred under Rule 61(i)(4). Washington argues this claim is not procedurally barred under Rule 61(i)(4) and the Commissioner erred in finding Rone's expert report reflected that the bullet fragments found in front of Gardner's house were fired from the same gun as the bullets recovered from the car, the victims, and 930 Spruce Street.

(29) We affirm on the alternative ground that this claim is procedurally barred under Rule 61(i)(3) and Washington fails to plead a colorable claim of a miscarriage of justice.[29] On direct appeal, this Court denied Washington's claim that Rone testified at trial, contrary to his written report, two bullet fragments found in front of Gardner's house came from the same gun as the other bullets recovered in the investigation.[30] This Court held it did not appear Rone testified about the two bullet fragments found in front of Gardner's house and that the presence or absence of expert testimony about the two bullet fragments did not have an impact on the sufficiency of the evidence.[31] The Commissioner concluded Rone's report showed that the bullet fragments found in front of Gardner's house were fired from the same gun as the bullets recovered from the car, the victims, and 930 Spruce Street.[32]

---

[29] *Unitrin, Inc. v. American Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995) (noting that appellate court may affirm judgment on basis of different rationale than rationale articulated by trial court).
[30] *Washington v. State*, 2011 WL 4908250, at *4.
[31] *Id.*
[32] *State v. Washington*, 2016 WL 5407852, at *8.

16

(30) Although it is not clear from Rone's report (without any testimony on the subject) that the bullet fragments found in front of Gardner's house were determined to be from the same gun as the other bullets and bullets fragments recovered in the investigation, Washington has not pled a colorable claim of a miscarriage of justice. We previously held there was sufficient testimony to convict Washington, even in the absence of expert testimony about the bullet fragments found in front of Gardner's house.[33] Washington's defense at trial was that he was not present during the shooting, not that the shooting did not occur in front of Gardner's house as he now seems to claim. Both Gardner and Washington testified that he apologized to her the night of the shooting, although Washington claimed he apologized because something tragic had occurred in front of her house, not because he was involved in the shooting. Washington has not shown he suffered any prejudice or injury as a result of the prosecutor's statements.

(31) Finally, Washington argues the Superior Court erred in denying his claim that he was deprived of the opportunity to ask Rone additional questions after he viewed the car during trial. The Superior Court accepted the Commissioner's recommendation that this claim was procedurally barred under Rule 61(i)(3). Washington argues that his counsel was ineffective and the loss of his opportunity to ask the questions constitutes a miscarriage of justice under Rule 61(i)(5).

---

[33] *Washington v. State*, 2011 WL 4908250, at *4.

17

(32) During the trial, the jury viewed the car (with trajectory rods showing the paths of the fired bullets) in the courthouse sally port. Washington was in a nearby Department of Correction van, but told the Superior Court after the viewing that he could not see the car. At the direction of the Superior Court, the State arranged for Washington to view the car outside the presence of the jury. After Washington viewed the car and the Superior Court asked him if there was anything else he needed with respect to the car and his case, he responded in the negative. Washington's counsel had already subjected Rone to extensive cross-examination and did not have any further questions. The Superior Court did not err in accepting the Commissioner's conclusion that this claim was procedurally barred under Rule 61(i)(3), Washington failed to show his counsel acted unreasonably, and Washington failed to show a reasonable probability of a different outcome if his counsel had asked the questions he now raises. The Superior Court did not err in denying Washington's motion for postconviction relief and granting postconviction counsel's motion to withdraw.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is AFFIRMED.

BY THE COURT:

_____
Justice

19