IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DURRION MORRISON, | § | |
| | § | |
| Defendant Below, | § | No. 236, 2020 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1607021543 (N) |
| | § | |
| Appellee. | § | |

Submitted: January 13, 2022
Decided: March 16, 2022

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

Upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

### I.  Procedural History

(1)  In August 2016, a grand jury indicted Durrion Morrison and co-defendant Joseph Hunt for multiple crimes including first-degree murder and attempted first-degree robbery.  The charges arose from the attempted robbery and shooting of Jason Hicks on March 30, 2016.

### A. Guilty Plea And Sentencing

(2)  After Hunt pleaded guilty to manslaughter and agreed to testify at the trial of any co-defendant, Morrison pleaded guilty to second-degree murder as a

lesser included offense of first-degree murder and possession of a firearm during the commission of a felony ("PFDCF") on November 3, 2017. The Superior Court ordered a pre-sentence investigation.

(3)     In mid-December, Morrison began sending letters to the Superior Court expressing his desire to withdraw his guilty plea. The Superior Court forwarded Morrison's letters to his trial counsel. On February 8, 2018, Morrison's trial counsel advised the Superior Court judge originally assigned to the case (a different Superior Court judge accepted the guilty plea because the originally assigned judge was unavailable) that:

> The defendant is claiming that my representation of him in this matter was ineffective, resulting in him accepting a plea that he would not have enter [sic] but for my ineffectiveness as his attorney. Based upon this claim, he has instructed me to file a motion to withdraw his plea agreement. Since he has raised a claim that I was ineffective in his representation, I am asking the Office of Conflict Counsel to assign a new attorney to review this matter. Please accept this email as my request to continue Morrison's sentencing scheduled for tomorrow.[1]

(4)     The Superior Court re-scheduled sentencing for February 16, 2018.[2] Because the judge originally assigned to the matter remained unavailable, the Superior Court judge who accepted Morrison's guilty plea presided over his sentencing. Morrison's trial counsel, who had not been replaced with new counsel,

---

[1] Email filed on February 9, 2018, D.I. 38 (Del. Super. Ct.).
[2] The sentencing order incorrectly states that sentencing occurred on January 12, 2018 instead of February 16, 2018.

2

told the Superior Court that Morrison wished to withdraw his plea, but that he did not find any basis for a motion to withdraw Morrison's guilty plea. He further stated that he had advised Morrison ineffective assistance claims should be raised in a Rule 61 motion and that Morrison would have to pursue a motion to withdraw his guilty plea *pro se*.

(5) The Superior Court then asked Morrison if he wished to proceed without counsel at sentencing, and Morrison explained that he wanted to withdraw his guilty plea. The Superior Court questioned the basis for such a motion, reminded Morrison of his representations during the plea colloquy, and told Morrison that he could raise ineffective assistance of counsel claims in a Rule 61 motion. Morrison eventually agreed to proceed with sentencing with his trial counsel's assistance. The Superior Court sentenced Morrison to twenty-eight years of Level V incarceration, suspended after twenty years for two years of Level III probation. Morrison did not file a direct appeal.

### B. Postconviction Proceedings

(6) On January 14, 2019, Morrison filed a timely motion for postconviction relief under Superior Court Criminal Rule 61. Morrison argued that: (i) his trial counsel was ineffective for failing to file a timely motion to withdraw his guilty plea as he had instructed; (ii) his trial counsel was ineffective for failing to file motions based on tampering with phone records and the ballistic expert's misconduct, failing

3

to obtain character and alibi witnesses, and failing to request a speedy trial or bench trial; (iii) there was tampering with Hunt's phone records to add a number for a cell phone associated with Morrison; and (iv) there was tampering with the ballistics evidence. The motion was assigned to a Superior Court Commissioner, who directed Morrison's trial counsel to respond to Morrison's allegations of ineffective assistance and set a briefing schedule.

(7) Morrison filed motions for issuance of a subpoena to Sprint for Hunt's phone records and for appointment of counsel. Morrison also filed a motion to amend his postconviction motion to include a claim that the Superior Court erred in its handling of his wish to withdraw his guilty plea. The Commissioner initially denied the motions for a subpoena and for appointment of counsel, but subsequently granted Morrison's motion for appointment of counsel and set a new briefing schedule. On January 13, 2020, postconviction counsel filed a motion to withdraw.

(8) On March 16, 2020, the Commissioner issued a report recommending denial of Morrison's postconviction motion and granting of postconviction counsel's motion to withdraw. On June 30, 2020, the Superior Court accepted the Commissioner's recommendation, denied Morrison's motion for postconviction relief, and granted postconviction counsel's motion to withdraw. This appeal followed.

4

## II.    Appeal

(9)    After the completion of briefing, this appeal was stayed pending the Court's decision in *Reed v. State*, No. 214, 2020.  The Court issued its decision in *Reed* on August 11, 2021.[3]  In this appeal, the Court determined that supplemental briefing was necessary to address the possible applicability of *Reed* and appointed counsel ("Counsel") to represent Morrison.

(10)    Counsel filed a brief and a motion to withdraw under Supreme Court Rule 26(c) ("Rule 26(c)").  Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues.  Counsel informed Morrison of the provisions of Rule 26(c) and provided Morrison with a copy of the motion to withdraw and the accompanying brief.  Counsel also informed Morrison of his right to identify any points he wished this Court to consider on appeal.  Morrison has submitted points for the Court's consideration.  The State has responded to the Rule 26(c) brief and argues that the Superior Court's judgment should be affirmed.

## III.    Standard And Scope Of Review

(11)    When reviewing a motion to withdraw and an accompanying brief, this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own

---

[3] 258 A.3d 807 (Del. 2021).

5

review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[4] This Court reviews the Superior Court's denial of postconviction relief for abuse of discretion and questions of law *de novo*.[5] The Court must consider the procedural requirements of Rule 61 before addressing any substantive issues.[6]

## IV.   Claims On Appeal

(12)   Morrison's claims on appeal may be summarized as follows: (i) his trial counsel was ineffective for failing to file a motion withdraw the guilty plea as he had instructed; (ii) his trial counsel was ineffective in his handling of the phone records and ballistics evidence; (iii) the State tampered with and withheld phone records; (iv) the State tampered with and failed to test ballistics evidence; and (v) the Superior Court abused its discretion in its handling of Morrison's desire to withdraw his guilty plea.  Claims that Morrison raised below, but failed to raise on appeal are deemed waived.[7]

---

[4] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).
[5] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[6] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[7] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997).  These claims include ineffective assistance based on trial counsel's failure to find character or alibi witnesses, pursue a speedy trial, and seek a bench trial.

## V. Analysis

## A. Applicable Standard For The Ineffective Assistance Claims

(13)   The procedural requirements of Rule 61 do not bar Morrison's timely claims of ineffective assistance of counsel.[8]  In most circumstances, a movant asserting ineffective assistance of counsel must show that: (i) his counsel's conduct fell below an objective standard of reasonableness; and (ii) there was a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.[9]  When the ineffective assistance claim arises in the context of a guilty plea, the movant must show that but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[10]

(14)   In a narrow set of circumstances, prejudice is presumed under *United States v. Cronic*.[11]  As this Court explained in *Reed*:

> *Cronic* applies where the deprivation of counsel is total, as when "the accused is denied counsel at a critical stage of his trial" entirely.  But even when a defendant is nominally represented, *Cronic* relieves a defendant of the burden of showing prejudice when the circumstances are such that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Such cases involve the "constructive denial of counsel," which requires that the circumstance demonstrate the "complete

---

[8] *Green v. State*, 238 A.3d 160, 175 (Del. 2020); *Bradley v. State*, 135 A.3d 748, 759 (Del. 2016).
[9] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).
[10] *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).
[11] 466 U.S. 648 (1984).

7

breakdown," either "in the adversarial process" or in attorney-client communication.[12]

Morrison argues that *Cronic* applies here because there was a complete breakdown in the attorney-client relationship due to his allegations that trial counsel conspired with the State to conceal falsified records and trial counsel's failure to communicate with him after he insisted on withdrawing his guilty plea. The State argues that *Strickland* applies because Morrison was not constructively denied the assistance of counsel.

(15) The record does not support Morrison's claims of a complete breakdown in the attorney-client relationship. In the months leading up to his guilty plea, Morrison regularly communicated with his trial counsel about the telephone records and his belief that someone had tampered with Hunt's telephone records by inserting a telephone number associated with Morrison. After Morrison pleaded guilty and raised the alleged tampering as a basis for withdrawal of his plea, his trial counsel spoke with him by video, advised the Superior Court of his wishes, obtained a continuance of sentencing, and spoke with him again before sentencing. Morrison does not dispute that his counsel advised him he would not file a motion withdraw the plea absent a credible basis that would merit withdrawal. Morrison has not shown a complete breakdown in the attorney-client relationship. Accordingly, we

---

[12] 258 A.3d at 824 (citations omitted)

conclude that *Cronic* does not apply here and Morrison must satisfy both prongs of *Strickland*.

### B. Morrison Cannot Show He Was Prejudiced By Trial Counsel's Failure To File A Motion To Withdraw The Guilty Plea

(16) As to Morrison's claim that his counsel was ineffective for failing to file a motion to withdraw his guilty plea as he instructed, we have assumed that Morrison satisfied the first prong of *Strickland*. In *Reed*, this Court held that a "criminal defendant's control of the objectives of the representation prior to sentencing requires that counsel either obey an instruction to file a motion to withdraw a guilty plea, or seek leave to withdraw so that the defendant can file the motion with other counsel or *pro se*."[13]

(17) To satisfy the second prong of *Strickland* in the plea withdrawal context, Morrison must show a reasonable probability that but for his counsel's error, he would have insisted on going to trial and the trial court would have granted his motion to withdraw plea.[14] Under Rule 32(d), the defendant bears the burden of showing a fair and just reason to permit withdrawal of his plea.[15] The relevant factors to consider are whether: (i) there was a procedural defect in taking the plea; (ii) the defendant voluntarily entered the plea; (iii) the defendant had a basis to assert

---

[13] 258 A.2d at 829.
[14] *Id.* at 829.
[15] Super. Ct. Crim. R. 32(d).

legal innocence; (iv) the defendant had adequate legal counsel; and (v) granting the motion would prejudice the State or unduly inconvenience the court.[16]

(18) As the Commissioner recognized, Morrison has not identified any procedural defect in the taking of his plea.[17] Morrison voluntarily entered the plea. In the Truth-in-Sentencing Guilty Plea Form, Morrison indicated that he freely and voluntarily decided to plead guilty, no one forced him to plead guilty, and he understood that he was waiving certain constitutional rights. During the guilty plea colloquy, Morrison affirmed that no one forced him to enter into the plea agreement, he understood that he was waiving his trial and appeal rights, and he committed the offenses of second-degree murder and PFDCF. Absent clear and convincing evidence to the contrary, which he has not identified, Morrison is bound by his representations during the guilty plea colloquy and in the Truth-in-Sentencing Guilty Plea Form.[18]

(19) Morrison has not shown a basis to assert legal innocence. His claim that someone tampered with the records for Hunt's phone to add a number associated with Morrison (the "7570 number") is not supported by the two sets of certified records that Sprint produced (once in response to the subpoena of a prosecutor and once in response to the subpoena of trial counsel). As the Commissioner also noted,

---

[16] *Scarborough v. State*, 938 A.2d 644, 649 (Del. Apr. 2007).
[17] *State v. Morrison*, 2020 WL 1316834, at *3 (Del. Super. Ct. Mar. 16, 2020).
[18] *Somerville*, 703 A.2d 629 at 632.

Morrison overstates the importance of the phone records to this case.[19] The 7570 number was not registered to Morrison and no witnesses attached the phone to him.[20] Hunt said that the 7570 number belonged to someone else.

(20) For the first time on appeal, Morrison claims that records for the 7570 number would show that he did not acquire it until a month after the murder and that he was not present at the crime scene. Even assuming this claim was properly before the Court,[21] it does not make any sense. If Morrison did not obtain the 7570 number until after the murder as he claims, then the location of that phone at the time of the murder would be irrelevant. Morrison also ignores that multiple phones, including the one with the 7570 number, were found at his residence. The absence of the phone with the 7570 number from the crime scene does not mean Morrison was also absent.

(21) We next address Morrison's claims concerning the ballistics evidence. The ballistics evidence consisted of:

| Item Number | Description | Location |
|---|---|---|
| 1 | 9 mm Luger, cartridge case, Russian brand | Crime scene |
| 2 | 9 mm Luger, cartridge case, Russian brand | Crime scene |
| 3 | 9 mm Luger, cartridge case, Russian brand | Crime scene |
| 4 | 9 mm Luger, cartridge case, Russian brand | Hicks's vehicle |
| 5 | 9 mm Luger, cartridge case, Russian brand | Hicks's vehicle |

[19] *Morrison*, 2020 WL 1316834, at *4.

[20] *Id.*

[21] Absent plain error, "[o]nly questions fairly presented to the trial court may be presented for review." Supr. Ct. R. 8.

11

| 6 | 9 mm Luger cartridge, Russian brand | Hicks's vehicle |
|---|---|---|
| 7 | 9 mm bullet | Hicks's vehicle |
| 8 | 9 mm bullet | Street corner |
| 9 | 9 mm bullet | Autopsy |
| 10 | 9 mm Luger cartridge case, Hornaday brand | Hicks's residence |

According to the ballistics expert's report, Items 1 through 5 were fired from the same gun, Items 7 through 9 were fired from the same gun, and Item 10 was fired from a different gun.[22]

(22) Morrison seems to argue that there was tampering and fraud because the police records describe Item 6 as a Hornaday 9 mm Luger live round, instead of a 9 mm Luger cartridge as described by the ballistics expert. Morrison also emphasizes that the ballistics expert was later charged with falsifying his time sheets. Morrison does not explain why the difference in the descriptions of Item 6 is significant. Neither the difference in the descriptions nor the expert's fraud establish Morrison's legal innocence in this matter. Morrison also claims for the first on appeal that the State failed to determine whether a gun found in Hunt's residence could be the murder weapon, but according to the State that gun was cross-checked with the ballistics evidence and the results were negative.[23]

---

[22] It is unclear from the report whether Items 1 through 5 and 7 through 9 were all fired from the same gun.

[23] State's Response to Appellant's Rule 26(c) Brief ¶ 52; Appendix to State's Response to Appellant's Rule 26(c) Brief at B7-B8, B18.

12

(23) In challenging the phone records and ballistic evidence, Morrison ignores the statements of Hunt and other witnesses. In his proffer, Hunt said that he planned to rob Hicks with Morrison and others. Hicks knew Hunt, so Hunt was going to pretend be a victim of the robbery.

(24) On March 30, 2016, Hicks drove with Hunt to pick up Morrison. Morrison started to get in the back of Hicks's vehicle, behind the passenger side where Hunt was sitting. Another man (who was not charged) approached the driver side where Hunt was sitting, tapped the door with a gun, and tried to yank the door open. Hicks drove away, with Morrison partially in and out of the vehicle. Morrison pulled out a gun, which Hunt tried to smack away. Morrison shot Hicks twice. After Hicks stopped the vehicle, jumped out, and ran up the street, Morrison followed him and shot him multiple times. Morrison ran away, while Hunt pretended not to be involved. Interviews with five other witnesses further established that Hunt had the idea to rob Hicks, Hunt recruited Morrison, and Morrison shot Hicks.

(25) Morrison has not shown that he lacked adequate legal counsel throughout the proceedings. Trial counsel communicated regularly with Morrison about the case, subpoenaed phone records when Morrison raised the possibility of tampering, and negotiated a plea deal that resulted in a twenty-year, non-suspended Level V sentence instead of life imprisonment. Finally, even assuming that withdrawal of the plea would cause little prejudice to the State, the other

13

*Scarborough* factors weigh heavily against withdrawal of the plea. Morrison has not shown a reasonable probability that but for his counsel's error, he would have insisted on going to trial and that the trial court would have granted his motion to withdraw his guilty plea.

### C. Morrison's Remaining Ineffective Assistance Claims Do Not Satisfy *Strickland*

(26) Morrison also argues that his trial counsel was ineffective for failing to: (i) challenge tampering with Hunt's phone records; (ii) obtain records for the 7570 number; and (iii) investigate whether a gun found in Hunt's residence was the murder weapon. It is unnecessary to determine whether trial counsel's performance fell below an objective standard of reasonableness because Morrison has not shown prejudice.[24]

(27) As previously discussed, Morrison has not offered anything to support his claim that the 7570 number was added to Hunt's phone records.[25] His new claim that the 7570 records would exculpate him because they would show that the 7570 number was not activated until after the murder while also showing he was not present for the murder does not make sense.[26] And even if the 7570 records showed

---

[24] *Strickland*, 466 U.S. at 697.
[25] *See supra* ¶ 19.
[26] *See supra* ¶ 20.

that the phone was not present at the crime scene as Morrison claims, that does not mean Morrison was also not present.[27]

(28)  As to Morrison's claims concerning the gun found at Hunt's residence, he did not raise this claim below and has not shown plain error. According to the State, the results of a cross-check of the gun against the ballistics evidence was negative.[28] Morrison completely ignores the statements of Hunt and other witnesses identifying him as the person who shot Hicks in a botched robbery attempt. He cannot show that if his counsel had pursued his theories concerning the phone records and ballistics evidence there is a reasonable probability of a different outcome.

### D. Morrison Waived His Claims Against The State

(29)  Morrison next argues that the State tampered with ballistics evidence and phone records, withheld phone records in violation of *Brady v. Maryland*,[29] and failed to test a gun found at Hunt's residence. A knowing, intelligent, and voluntary guilty plea waives a defendant's right to challenge all errors or defects occurring before the plea, except a lack of subject matter jurisdiction, including any alleged *Brady* violations.[30]  The record reflects that Morrison entered a knowingly,

---

[27] *See id.*

[28] *See supra* ¶ 22.

[29] 373 U.S. 83 (1963).

[30] *Mack v. State*, 2019 WL 7342514, at *2 (Del. Dec. 30, 2019); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).

intelligent, and voluntary guilty plea.[31] Morrison's claims that the State tampered with and withheld evidence are therefore waived.

### E. Rule 61(i)(3) Bars Morrison's Claim That The Superior Court Erred

(30)  Finally, Morrison argues that the Superior Court abused its discretion in its handling of his expressed wish to withdraw his guilty plea. Rule 61(i)(3) provides that any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred unless the defendant can establish cause for relief from the procedural default and prejudice from a violation of the defendant's rights. To establish cause, the movant must demonstrate that an external impediment prevented him from raising the claim earlier.[32] To establish prejudice, the movant must show actual prejudice resulting from the alleged error.[33] Morrison blames trial counsel for his failure to raise this claim on direct appeal, but as already discussed cannot show actual prejudice.[34] Under Rule 61(i)(5), a procedurally defaulted claim may be heard if the movant pleads lack of jurisdiction, new evidence creating a strong inference of actual innocence, or a new rule of constitutional law retroactively renders the conviction invalid. Morrison has not satisfied any of the requirements of Rule 61(i)(5).

---

[31] *See supra* ¶ 18.
[32] *Younger*, 580 A.2d at 556.
[33] *Id.*
[34] *See supra* ¶¶ 16-25.

16

(31) The Court has reviewed the record carefully and concluded that Morrison's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel made a conscientious effort to examine the record and the law and properly determined that Morrison could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED and the motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice