IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WALTER LOLLEY, | § | |
| | § | |
| Defendant Below, | § | No. 456, 2024 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1812005541 (N) |
| | § | |
| Appellee. | § | |

Submitted: April 11, 2025
Decided: June 17, 2025

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     In May 2018, police found the bodies of Thessalonians Berry and Isabel Cooper in the front seat of a car near the intersection of Kiamensi Road and Rothwell Drive in New Castle County, Delaware.  Both had been shot from behind at close-range.  Witness statements, video surveillance footage, and a blood-stained shirt with gunshot residue implicated Walter Lolley as the shooter.  Lolley fled from Delaware to Georgia, which is where law enforcement eventually apprehended him.

(2)     In April 2019, a grand jury indicted Lolley for two counts of first-degree murder, two counts of possession of a firearm during the commission of a

felony, and two counts of possession of a firearm by a person prohibited. In February 2020, Lolley entered a *Robinson* plea to two counts of second-degree murder as lesser-included offenses of first-degree murder.[1] The State agreed that it would not seek to declare Lolley a habitual offender and to cap its sentencing recommendation to thirty years of Level V incarceration. After Lolley entered his plea, the Superior Court ordered a presentencing investigation.

(3) Prior to Lolley's sentencing hearing, Lolley filed *pro se* motions to withdraw his plea in October 2020 and January 2021. Lolley alleged that his counsel had failed to file a motion to suppress, ignored his requests to provide him with discovery, and failed to file a motion to withdraw his plea. Lolley further claimed that he faced a sentence capped at thirty years—not thirty years to life imprisonment—as set forth in the Truth-in-Sentencing Plea Form. The Superior Court denied the motions, finding that Lolley had knowingly, intelligently, and voluntarily entered the plea.

(4) On July 23, 2021, the Superior Court sentenced Lolley to 100 years of Level V incarceration, suspended after thirty years for decreasing levels of supervision. Lolley did not file a direct appeal.

---

[1] *Robinson v. State*, 291 A.2d 279, 281 (Del. 1972) (permitting the acceptance of a guilty plea in the absence of an admission of guilt).

(5) On August 11, 2022, Lolley filed a motion for ineffective assistance of counsel. According to the Superior Court docket, the motion was sent back to Lolley as non-conforming on September 23, 2022. On November 22, 2022, Lolley moved for appointment of counsel and postconviction relief under Superior Court Criminal Rule 61.

(6) The Superior Court appointed counsel to represent Lolley ("Postconviction Counsel") and issued a briefing schedule. Lolley's trial counsel filed an affidavit responding to the *pro se* claims of ineffective assistance. On December 22, 2023, Postconviction Counsel moved to withdraw, stating that Lolley's postconviction claims were untimely and that the record revealed no other possible claims. Lolley and the State submitted responses.

(7) On October 1, 2024, the Superior Court denied Lolley's motion for postconviction relief.[2] The court found that the postconviction motion was timely, but that Lolley's claims were non-meritorious.[3] The court subsequently granted Postconviction Counsel's motion to withdraw. This appeal followed.

(8) The Court reviews the Superior Court's denial of postconviction relief for abuse of discretion and questions of law *de novo*.[4] The Court applies the

---

[2] *State v. Lolley*, 2022 WL 22882067 (Del. Super. Ct. Oct. 1, 2024).
[3] *Id.* at *2-*5.
[4] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

3

procedural requirements of Rule 61 before addressing any substantive issues,[5] but the procedural bars of Rule 61 do not apply to timely claims of ineffective assistance of counsel.[6] Any claims raised below, but not raised on appeal are deemed waived.[7]

(9) On appeal, Lolley argues that his trial counsel was ineffective for (i) not providing him with all of the discovery and lying about the evidence; (ii) failing to move to suppress the evidence; (iii) and failing to assist him with the motion to withdraw his plea, which he claims was coerced. Lolley further argues that (iv) the State breached the plea agreement; and (v) he is innocent.

(10) As a threshold issue, the procedural requirements of Rule 61 do not bar Lolley's claims of ineffective assistance. As the Superior Court found, Lolley's first motion for postconviction relief was timely because it was filed within one year of his conviction becoming final.[8]

(11) To prevail on a claim of ineffective assistance of counsel, a movant must show that: (i) his counsel's conduct fell below an objective standard of reasonableness; and (ii) there was a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.[9] In the context of a

---

[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[6] *Green v. State*, 238 A.3d 160, 175 (Del. 2020); *Bradley v. State*, 135 A.3d 748, 759 (Del. 2016).
[7] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997).
[8] *Lolley*, 2022 WL 22882067, at *3. Because Lolley did not file a direct appeal, his conviction became final thirty days after the imposition of his sentence on July 23, 2021. Del. Super. Ct. Crim. R. 61(m)(1)(i).
[9] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

4

guilty plea, the movant must show that but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[10]

(12) Lolley argues that his trial counsel was ineffective because he did not receive all of the discovery until after he was sentenced. But, as Lolley's trial counsel explained in his affidavit, he gave Lolley a copy of the discovery and only withheld discovery that was subject to a protective order. Trial counsel further averred that he reviewed the evidence with Lolley, with a focus on evidence that the State was likely to rely upon at trial. Notably, that evidence included (a) expert testimony that the victims were shot from the rear of the car where Lolley was seen shortly before the shooting and (b) gunshot residue on a shirt belonging to Lolley. Although Lolley further claims that his trial counsel gave him false information, the record does not support these contentions. Without any evidentiary support, Lolley accuses trial counsel of falsely informing him that his cell phone was found at the scene of the crime. He also states that trial counsel initially misinformed him that there were photographs showing him with a gun. But prior to entering the plea, Lolley heard from the State. The State summarized the evidence that it intended to use at trial, none of which included the allegedly false information he now raises. Lolley therefore has not demonstrated that, but for these alleged errors, he would have insisted on going to trial. The Superior Court did not err in concluding that

---

[10] *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

Lolley failed to show that his trial counsel's handling of discovery was objectively unreasonable or that he was prejudiced.

(13) Lolley next contends that his trial counsel was ineffective for failing to file a motion to suppress two shirts found near the crime scene. Lolley argues that it was impossible for the shirts to belong to him as the State claimed. But Lolley provides no explanation beyond this conclusory remark. Furthermore, a review of the record supports the conclusion in trial counsel's affidavit that there was no meritorious basis for a suppression motion. At the plea colloquy, the prosecutor referred to a shirt found at the crime scene with Lolley's blood on it as well as gunshot residue. The prosecutor also described Lolley and one of the victims as wearing matching outfits that Lolley had purchased on the day of the shootings. Thus, Lolley fails to identify any basis for a motion to suppress and fails to show that his trial counsel's decision not to file a motion to suppress was objectively unreasonable.

(14) Next, Lolley asserts that his trial counsel was ineffective for failing to assist him with the motion to withdraw his plea. Lolley filed his *pro se* motions to withdraw his plea, alleging ineffective assistance of trial counsel in October 2020 and January 2021. In his affidavit responding to the motions, Lolley's trial counsel stated that he did not recall Lolley asking to withdraw his plea until sentencing. The Superior Court denied the *pro se* motions in May 2021. Several months later, this

Court issued its decision in *Reed v. State* regarding defense counsel's obligations regarding a defendant's request to withdraw a guilty plea.[11] There, we held that:

> a criminal defendant's control of the objectives of the representation prior to sentencing requires that counsel either obey an instruction to file a motion to withdraw a guilty plea, or seek leave to withdraw so that the defendant can file the motion with other counsel or *pro se*. If the defendant's reasons for filing the motion to withdraw include an assertion that his or her counsel has been ineffective or coerced the defendant into pleading, then defense counsel should ask the court to appoint new unconflicted counsel to handle the filing of the motion. Even if counsel believes the defendant's motion is contrary to his interest or is without merit, a defendant's decision to attempt to withdraw a plea prior to sentencing cannot be overruled by counsel.[12]

Even assuming *Reed* applies retroactively and Lolley's trial counsel refused to file a motion to withdraw the plea, Lolley cannot show a reasonable probability that but for his trial counsel's error, he would have insisted on going to trial and the Superior Court would have granted his motion to withdraw the plea.[13]

(15)  Under Rule 32(d), the defendant bears the burden of showing a fair and just reason to permit withdrawal of his plea. Under *Scarborough v. State*, the relevant factors to consider are whether: (i) there was a procedural defect in taking

---

[11] 258 A.3d 807 (Del. 2021).

[12] *Id*. at 829.

[13] *Id.* (holding that to satisfy the prejudice prong of *Strickland* in the plea withdrawal context the movant must show that there is some reasonable probability that but for counsel's error, he would have insisted on going to trial and the trial court would have granted his motion to withdraw the plea). *See also Morrison v. State*, 2022 WL 790507, at *3-*5 (Del. Mar. 16, 2022) (concluding that the defendant had not shown prejudice in the plea withdrawal context where he failed to show a reasonable probability that he would have insisted on going to trial and the Superior Court would have granted a motion to withdraw the plea).

the plea; (ii) the defendant knowingly and voluntarily consented to the plea agreement; (iii) the defendant had a basis to assert legal innocence; (iv) the defendant had adequate legal counsel throughout the proceedings; and (v) granting the motion would prejudice the State or unduly inconvenience the court.[14]

(16)   Lolley has not identified any procedural defect in the taking of his plea.[15]  He claims that his trial counsel coerced him into entering the *Robinson* plea, but the record refutes this claim.  In the Truth-in-Sentencing Guilty Plea Form, Lolley indicated that he freely and voluntarily decided to enter the plea.  No one forced him to enter the plea, and he understood that he was waiving certain constitutional rights.  During the plea colloquy, Lolley affirmed that he had reviewed the plea agreement with his counsel and that no one was forcing him to enter into the plea agreement.  Lolley claims that his trial counsel and the prosecutor added life imprisonment as the maximum penalty for second-degree murder after he signed the Truth-in-Sentencing Guilty Plea Form.  But this contention contradicts his responses to the trial judge during the plea colloquy.  There, Lolley stated that he understood the sentence for second-degree murder was fifteen years to life imprisonment and

---

[14] 938 A.3d 644, 649 (Del. 2007).

[15] Although the plea transcript states that Lolley said he pleaded "guilty for robbery second" when the court asked how he pleaded to the charges of second-degree murder, this appears to be a transcription error of "guilty for *Robinson*."  Ans. Br. App. at B28-B29.

that the Superior Court could sentence him to life imprisonment. The record shows that Lolley knowingly and voluntarily entered the *Robinson* plea.

(17) Lolley does not have a basis to assert legal innocence. A person is guilty of second-degree murder when he "recklessly causes the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life."[16] Following the prosecutor's proffer of the evidence that would be presented at trial—(i) surveillance video showing Lolley in the back seat of the vehicle with the victims in the front seat minutes before the victims were shot from behind, (ii) the presence of Lolley's shirt with his blood and gunshot residue near the car, and (iii) Lolley's flight to Georgia—the State had sufficient evidence to prove that he was guilty of second-degree murder. Lolley now claims that one of the elements of second-degree murder was unsatisfied. But he fails to identify which one. To the extent he is arguing that he can assert legal innocence because he was under the influence of PCP when he committed the murders, he is mistaken. Voluntary intoxication is not a defense.[17]

(18) Lolley has not shown that he lacked adequate legal counsel. Lolley's trial counsel communicated with him throughout the proceedings, reviewed the

---

[16] 11 *Del. C.* § 635(1).

[17] 11 *Del. C.* § 421 ("The fact that a criminal act was committed while the person committing such act was in a state of intoxication, or was committed because of such intoxication, is no defense to any criminal charge if the intoxication was voluntary.").

evidence with him, and advised him on the merits of possible defenses. Finally, the other *Scarborough* factors weigh heavily against withdrawal of the plea. Lolley has not shown a reasonable probability that but for his counsel's failure to assist him with the filing of his motion to withdraw the plea, he would have insisted on going to trial and that the trial court would have granted his motion to withdraw the plea.

(19) Lolley also claims that the State breached the plea agreement by asking the Superior Court to sentence him to fifty years of Level V incarceration, suspended after the fifteen-year minimum mandatory for each count of second-degree murder. In the plea agreement, the State agreed to cap its sentencing recommendation to thirty years. Rule 61(i)(3) bars this claim because Lolley did not raise it on direct appeal and has failed to show "[c]ause for relief from the procedural default…and [p]rejudice from violation of the movant's rights."[18]

(20) Last, Lolley asserts actual innocence based on his claim that an unspecified element of second-degree murder was unsatisfied. As previously discussed, we find that this claim lacks merit.[19] The Superior Court did not err in denying Lolley's motion for postconviction relief.

---

[18] Super. Ct. Crim. R. 61(i)(3). *See also Medley v. State*, 2024 WL 5074826, at *3 (Del. Dec. 10, 2024) (holding Rule 61(i)(3) barred claim where the defendant failed to raise the claim on direct appeal and failed to establish cause and prejudice; *Wheeler v. State*, 296 A.3d 363, 374-75 (Del. 2023) (same).

[19] *See supra ¶ 17.*

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is AFFIRMED.

BY THE COURT:


*/s/ N. Christopher Griffiths*
Justice

11